Filed 8/14/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D074536 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD273861) |
| DERRICK LYLE BURNS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Steven E. Stone, Judge.  Conditionally reversed, with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and

Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J.

Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Derrick Lyle Burns struck his girlfriend and led law enforcement on a high-speed chase. A jury convicted him of false imprisonment, evading a police vehicle, infliction of corporal injury on a spouse or cohabitant, and two counts of assault with a deadly weapon; Burns admitted two prior strikes. After dismissing one of the strikes, the trial court sentenced Burns to a total term of 19 years, eight months in state prison.

Burns seeks reversal of his convictions on counts 2 and 3 (evading a police officer and inflicting corporal injury) on the basis that his counsel conceded guilt during opening and closing statements without his express consent. Consistent with our recent decision in *People v. Marsh* (2019) 37 Cal.App.5th 474 (*Marsh*), we reject this claim as contrary to controlling precedent. However, we accept Burns's remaining claim that the case should be conditionally reversed for the trial court to consider his eligibility for mental health diversion pursuant to newly enacted Penal Code section 1001.36.[1] As more fully set forth in the Disposition, we conditionally reverse the judgment with directions for further proceedings under section 1001.36.

### FACTUAL AND PROCEDURAL BACKGROUND

Bystanders called 911 in September 2017 after witnessing Burns repeatedly strike his girlfriend K.B. in a hotel parking lot while struggling over a set of car keys. K.B. tried to drive away, but Burns managed to get into the car. After K.B. drove a short distance, Burns made her stop the vehicle to switch seats. K.B. sat in the rear seat of the

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

parked vehicle as Burns repeatedly swung at her, prompting another bystander to call 911.

San Diego Police Department Officer Matthew Steinbach responded to the call and ordered Burns to get out of the vehicle. Ignoring this command, Burns drove off and led Steinbach on a high-speed chase. Steinbach briefly lost sight of the vehicle as it headed toward the naval base in Point Loma. Spotting it a couple of seconds later, he resumed pursuit. At some point Burns jumped out of the moving vehicle while it continued to speed ahead. K.B. jumped out seconds later, and the car then collided with an oncoming vehicle and crashed into a wall. An off-duty Border Patrol agent who saw Burns jump out of the moving vehicle pursued him on foot and detained him until police arrived.

The San Diego County District Attorney's Office charged Burns by amended information with kidnapping (§ 207, subd. (a), count 1), evading a police vehicle (Veh. Code, § 2800.2, subd. (a), count 2), infliction of corporal injury on a spouse or cohabitant (Pen. Code, § 273.5, subd. (a), count 3), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1), counts 4 & 5). The information further alleged an enhancement for a prior serious felony (§§ 667, subds. (a)(1)−(2), 668, 1192.7, subd. (c)) and two prior strikes (§§ 667, subds. (b)–(i), 668, 1170.12).

In May 2018, a jury convicted Burns of the lesser included offense of false imprisonment on count 1 (§ 236) but otherwise found him guilty as charged. After the jury was discharged, Burns admitted the prior conviction allegations. At sentencing, the

court granted Burns's *Romero* motion[2] and struck one of the two prior strike convictions. This decision was a "very close call"; the court stated for the record that the public would be in "significant danger" were Burns to be paroled after three years. It imposed a total term of 19 years and eight months in state prison.

DISCUSSION

Burns raises two contentions on appeal. First, he claims concessions by defense counsel made during opening and closing statements compel reversal of his convictions on counts 2 and 3. Second, he argues the case should be remanded for mental health diversion proceedings under newly enacted section 1001.36. As we explain, we reject the first claim but accept the second.

1.      *Concessions by Defense Counsel*

Defense counsel conceded Burns's guilt on counts 2 and 3 during his opening and closing arguments. In his opening statement, he commented:

> "And I want to note that there were mistakes made by Mr. Burns on September 27th, 2017. There were mistakes made. And I'm going to ask you to hold him accountable for those mistakes because this case is about accountability.
>
> "He hit [the victim] . . . . He hit her. There's no question about it. He did it. It was wrong - - and I'm going to get up here in closing argument and ask you to hold him accountable for it.
>
> "He drove recklessly from Officer Steinbach. He did it. It was wrong. I'm going to ask you to hold him accountable for that."

---

2       *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529−530.

4

Likewise during his closing statement, defense counsel urged the jury to convict on counts 2 and 3:

> "So this case is about accountability. . . . [¶]
>
> "I'll start with count 2, the felony evading.  Find him guilty.  That's the first thing you should go back in the jury room and find that verdict form and find him guilty.
>
> "The domestic violence charge.  The only thing that I'm going to say about that is yes, he is guilty."

The record is silent as to whether Burns agreed or disagreed to his counsel's concession, and he was neither advised of, nor expressly waived, his constitutional trial rights.  The jury convicted him as charged on counts 2 and 3, finding him guilty of evading a police officer and inflicting corporal injury.

Burns argues that counsel's concession, without his express consent, violated his constitutional rights to the effective assistance of counsel, jury trial, confrontation, and silence.  Citing *McCoy v. Louisiana* (2018) 138 S.Ct. 1500 (*McCoy*) and *People v. Farwell* (2018) 5 Cal.5th 295, 299 (*Farwell*), he maintains this error compels reversal on counts 2 and 3 because it was tantamount to a guilty plea to which he never agreed.  As we explain, we reject his claim under controlling law.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." (*Boykin v. Alabama* (1969) 395 U.S. 238, 243 (*Boykin*).)  "These include the privilege against self-incrimination, the right to trial by jury, and the right to confrontation." (*Farwell*, *supra*, 5 Cal.5th at p. 299.)  For a plea to be constitutionally valid, the record must demonstrate a defendant's knowing

5

and voluntary waiver of these three constitutional trial rights, now known as a "*Boykin-Tahl* waiver*"; waiver cannot be presumed from a silent record. (*Boykin*, at p. 243; *In re Tahl* (1969) 1 Cal.3d 122, 132.)

Because a guilty plea constitutes a criminal conviction, it "is not simply a strategic choice." (*Florida v. Nixon* (2004) 543 U.S. 175, 187 (*Nixon*).) Counsel lacks authority to consent to a guilty plea on a client's behalf, and a client's tacit acquiescence in the decision does not suffice. (*Id.* at pp. 187−188.) It follows that "in the event of a guilty plea *or other conduct tantamount to a plea*, 'the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights.' " (*People v. Lopez* (2019) 31 Cal.App.5th 55, 63 (*Lopez*), italics added.)[3] Thus, the threshold question is whether defense counsel's concessions during his opening and closing statements at trial were tantamount to a guilty plea. (*Ibid.*)

On this threshold question, California law has long been settled: "trial counsel's decision not to contest, and even expressly to concede, guilt on one or more charges . . . is not tantamount to a guilty plea requiring a *Boykin-Tahl* waiver." (*Cain*, *supra*, 10 Cal.4th at p. 30, accord *People v. Lucas* (1995) 12 Cal.4th 415, 446.) The trial court has no duty to inquire whether the defendant agrees with his attorney's concession strategy, at least where there is no explicit indication he disagrees with the approach. (*Cain*, at

---

3    The *Lopez* court initially concluded defense counsel's concession of guilt on a hit-and-run charge during arguments *was* tantamount to a guilty plea, requiring an express waiver of the defendant's constitutional trial rights. Following rehearing, it vacated its earlier decision and reversed course under *People v. Cain* (1995) 10 Cal.4th 1, 30 (*Cain*), discussed *post*. (*Lopez*, *supra*, 31 Cal.App.5th at pp. 57, 63−67.)

p. 30*.*)  Thus in *Cain*, the California Supreme Court concluded that defense counsel's concession of his client's guilt as to murder and burglary charges during closing arguments was not equivalent to a guilty plea and did not necessitate a *Boykin-Tahl* waiver.  (*Ibid.* & fn. 4.)  A decade later, the United States Supreme Court reached a similar conclusion:  An attorney's concession of guilt, to which the defendant neither expressly consented nor objected, was not tantamount to a guilty plea because the defendant "retained the rights accorded a defendant in a criminal trial."  (*Nixon*, *supra*, 543 U.S. at pp. 188−189.)

Burns argues two recent authorities change this long-standing rule.  In *Farwell*, the California Supreme Court concluded that a stipulation encompassing all elements of a charged offense was tantamount to a guilty plea because it conclusively established all elements of the charged offense, rendering a guilty verdict a foregone conclusion.  (*Farwell*, *supra*, 5 Cal.5th at pp. 299, 308.)  Although the jury still had a role, it was constrained; presuming it followed the court's instruction to accept stipulated facts as true, it had no option but to find the defendant guilty.  (*Id.* at p. 300.)  Burns contends his attorney's concession, like the stipulation in *Farwell*, rendered guilt a foregone conclusion, necessitating a *Boykin-Tahl* waiver.

Burns also relies on *McCoy*, in which defense counsel conceded his client's guilt on murder charges during opening and closing statements against his client's repeated objections.  (138 S.Ct. at p. 1506.)  The United States Supreme Court concluded that this concession was structural error, violating the defendant's Sixth Amendment right to the effective assistance of counsel.  (*Id.* at pp. 1508−1509.)  As *McCoy* explained, choice of

7

the defense objective is a client's prerogative; he may opt to steadfastly assert innocence, notwithstanding his attorney's view that conceding guilt would be a better strategy. (*Ibid.*; see generally, *People v. Flores* (2019) 34 Cal.App.5th 270, 279.) Burns contends his counsel's concession is similar to the one in *McCoy*, requiring reversal notwithstanding his failure to expressly object.

Division Four of the Second Appellate District rejected a claim identical to the one Burns makes here. (*Lopez*, *supra*, 31 Cal.App.5th at pp. 63−67.) *Lopez* relied on *Cain* and distinguished *Farwell* and *McCoy*. (*Id.* at pp. 63, 64, 66.) Having recently followed *Lopez* in *Marsh*, *supra*, 37 Cal.App.5th 474, we decline the invitation to reject it here.

As *Lopez* explained, unlike in *Farwell*, there was no stipulation admitting the elements of counts 2 and 3 that narrowed the jury's role. (*Lopez*, *supra*, 31 Cal.App.5th at p. 64.) The jury was still instructed that the prosecution had to prove guilt beyond a reasonable doubt and that statements made by attorneys were not evidence. (CALCRIM Nos. 220, 222.) Despite defense counsel's concession, the prosecution still had to present competent evidence to establish the essential elements of each charge, something it would not have had to do had Burns pleaded guilty. (*Lopez*, at p. 64.) The prosecutor's comment during his closing argument that he would spend little time on counts 2 and 3 given the defense concession neither changed the burden of proof nor limited the scope of the jury's role. (*Ibid.*) Indeed, the prosecutor *emphasized* that those charges remained his burden to prove. Furthermore, unlike a guilty plea, Burns had a jury trial with the opportunity to confront adverse witnesses "and could endeavor, as [defense counsel] did,

8

to exclude prejudicial evidence." (*Nixon*, *supra*, 543 U.S. at p. 188.)  He exercised his right against self-incrimination by not taking the stand.

Burns suggests there is no meaningful distinction between stipulating to the elements of a crime and conceding guilt during attorney argument; he argues that both circumstances render guilt a foregone conclusion.  But as *Lopez* noted, courts have repeatedly drawn such distinctions.  (*Lopez*, *supra*, 31 Cal.App.5th at p. 65, citing *Nixon*, *supra*, 543 U.S. at p. 188 [concession was not tantamount to a guilty plea because the defendant retained his constitutional trial rights]; *Boykin*, *supra*, 395 U.S. at pp. 242−243 & fn. 4 [a guilty plea is more than a confession admitting guilt; it is a stipulation that the prosecution need not advance proof]; and *People v. Hendricks* (1987) 43 Cal.3d 584, 592−593 [counsel's lackluster presentation of a defense was not tantamount to a guilty plea requiring a personal, on-the-record waiver of defendant's constitutional trial rights].) In short, Burns's reliance on *Farwell* is unavailing.  Defense counsel's concession was not tantamount to a guilty plea and did not necessitate a *Boykin-Tahl* waiver.  (*Lopez*, at p. 65.)

*Lopez* also persuasively rejected the argument Burns makes here under *McCoy*, finding no authority "allowing extension of *McCoy*'s holding to a situation where the defendant does not expressly disagree with a decision relating to his right to control the objective of his defense." (*Lopez*, *supra*, 31 Cal.App.5th at p. 66.)  As *McCoy* explained, when a defendant declines to participate in his defense, his counsel may pursue a strategy believed to be in his best interest.  (*McCoy*, *supra*, 138 S.Ct. at p. 1509.)  But where a client makes "express statements" indicating his will to maintain innocence, "counsel

9

may not steer the ship the other way." (*Ibid.*) *McCoy* is thus predicated on a client's express objection to defense counsel's concession strategy. Writing for the majority, Justice Ginsberg distinguished her earlier opinion in *Nixon* on this very basis: "in contrast to *Nixon*, the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." (*McCoy*, *supra*, 138 S.Ct. at p. 1505.) Here, as in *Lopez*, there is nothing in the record to suggest Burns disagreed with his counsel's concession strategy. (*Lopez*, at p. 66.) *McCoy* does not apply.[4]

2.    *Mental Health Diversion*

Burns argues the case should be remanded for the trial court to evaluate his eligibility for pretrial mental health diversion pursuant to newly enacted section 1001.36. Effective June 27, 2018, the new statute authorizes diversion for eligible defendants with qualifying mental disorders. (Stats. 2018, ch. 34, § 24.) An express purpose of the new law is to increase diversion of individuals with mental disorders while protecting public safety. (§ 1001.35, subd. (a).) The People assert the new law does not apply retroactively to defendants like Burns who have already been sentenced, and that even if it does, remand would be a futile act. For reasons we explain, we agree with Burns and

---

[4]    Burns contends that *McCoy* abrogates *Cain*. We disagree. *McCoy*, *supra*, 138 S.Ct. 1500 did not abrogate *Nixon, supra,* 543 U.S. 175, which like *Cain* differentiates a concession strategy from a guilty plea. Burns attempts to distinguish *Nixon* on the ground that he (unlike the defendant in *Nixon*) was not apprised of his attorney's concession strategy. However, it was the express nature of the defendant's objection, not the extent of attorney-client discussions on trial strategy, that distinguished *Nixon* from *McCoy*. (*McCoy*, at pp. 1504, 1509.)

conditionally reverse the judgment to permit the trial court to evaluate his eligibility for diversion.

The new statute defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) A trial court has discretion to grant pretrial diversion if it finds all of the following: (1) defendant has been diagnosed with a qualifying mental disorder; (2) the disorder was a significant factor in the commission of the charged offense; (3) defendant's symptoms will respond to treatment; (4) defendant consents to diversion and waives his or her speedy trial rights; (5) defendant agrees to comply with treatment, and (6) defendant will not pose an unreasonable risk of danger to public safety as defined in section 1170.18 if treated in the community. (§ 1001.36, subd. (b)(1).) Defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2).) If diversion is granted, the court may postpone prosecution for a maximum of two years and refer the defendant to an inpatient or outpatient mental health treatment program. (§ 1001.36, subd. (c)(1)(B) & (c)(3).) Assuming the defendant performs satisfactorily during the period of diversion, the court must dismiss his or her criminal charges. (§ 1001.36, subd. (e).)

Burns argues section 1001.36 applies retroactively to all nonfinal judgments, relying on the rule of retroactivity in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). As a general rule, statutes are presumed to apply only prospectively. (*People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307 (*Lara*); see § 3.) But this is a cannon of statutory

11

interpretation—the Legislature can enact laws that apply retroactively either explicitly or by implication. (*Lara*, at p. 307.) Under the *Estrada* rule, "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Estrada*, at p. 745.) This rule "rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 881 (*Buycks*).)

*Estrada* applies not only to statutes that lessen punishment for a particular crime, but also to legislation that ameliorates the possible punishment for a class of persons. (*Lara*, *supra*, 4 Cal.5th at p. 308.) Thus in *Lara,* the Supreme Court retroactively applied Proposition 57—which mandated transfer hearings for juveniles to be tried as adults—to juvenile defendants who had already been charged in adult court. Significantly, *Lara* considered a statute that included language regarding timing and procedure for transfer hearings. A prosecutor seeking to try a minor in adult court was required to file a motion

12

"prior to the attachment of jeopardy" in juvenile court. (Welf. & Inst. Code, § 707, former subd. (a)(1), now subd. (a)(1) & (a)(2), as amended by Stats. 2018, ch. 1012, § 1.) Despite this language, *Lara* concluded that the *Estrada* rule applied such that the new statutory procedure could be invoked even by defendants already charged and convicted as adults, as long as their judgments of conviction were not final.

Courts are divided as to whether section 1001.36 applies retroactively to cases not yet final on appeal. (Compare *People v. Frahs* (2018) 27 Cal.App.5th 784, review granted Dec. 27, 2018, S252220 (*Frahs*), and *People v. Weaver* (2019) 36 Cal.App.5th 1103, 1121 with *People v. Craine* (2019) 35 Cal.App.5th 744, 749 (*Craine*).) *Frahs* observed that just as the timing requirement for transfer motions did not bar retroactive application of Proposition 57 to nonfinal cases, section 1001.36, subdivision (c)'s reference to "pretrial" diversion before "adjudication" merely reflected "how this particular program is ordinarily designed to operate" and did not bar retroactivity. (*Frahs*, at p. 791.) Disagreeing with *Frahs*, *Craine* relied on the statutory text to conclude a *pretrial* diversion program could not apply to a defendant who had already been convicted and sentenced. (*Craine*, at p. 751.) *Weaver* acknowledged the statutory text cited by *Craine*, but found it insufficient to rebut *Estrada*'s inference of retroactivity as applied in *Lara*. (*Weaver*, at pp. 1120–1121.)

Were we writing on a blank slate, we might find *Craine*'s reasoning persuasive. Language in section 1001.36 reflects certain legislative assumptions about how the mental health diversion program will operate, and the references to *pretrial* diversion seem to suggest an understanding about the anticipated timing of such a request.

13

However, addressing a statute that also contained express timing requirements, the California Supreme Court in *Lara* unanimously concluded the *Estrada* presumption applied even though those requirements could not be met if the statute were invoked in cases not final on appeal. (*Lara*, *supra*, 4 Cal.5th at p. 309.)

It is true, as *Craine* points out, that *Lara* did not specifically discuss this statutory "timing" language in Proposition 57. (*Craine*, *supra*, 35 Cal.App.5th at p. 756; see Welf. & Inst. Code, § 707, former subd. (a)(1), now subd. (a)(1) & (a)(2).) Nevertheless, we can find no reasonable way to factually distinguish *Lara* on this point. *Craine*'s suggestion that the statutory timing language in *Lara* "did not facially preclude retroactive application of Proposition 57" and "only presented a theoretical obstacle for prosecutors in terms of getting cases previously filed under the old law transferred from juvenile court back into criminal court" (*Craine*, at p. 757) does not persuade us. The relevance of the timing language in both statutes is that it reflects legislative intent as to how the new procedure will *normally* operate. If that intent is not enough to dictate prospective application in *Lara* as to Proposition 57, we do not see how it can require prospective application as to mental health diversion in section 1001.36. And to reject *Lara* on the basis that a decision is not authority for a proposition not specifically discussed would be to conclude that the Supreme Court reached the wrong result because it overlooked crucial statutory language. Absent further guidance from our high court, we believe our institutional role compels us to follow *Frahs* and *Weaver* in applying *Lara* to permit retroactive application of section 1001.36.

14

Legislative history does not change our conclusion. Citing an Assembly report, the People suggest that the Legislature was motivated by potential cost savings in enacting section 1001.36, a motivation inconsistent with retroactive application to defendants like Burns. (Assem. Floor Analysis of Assem. Bill No. 1810 (2017−2018 Reg. Sess.) as amended June 12, 2018, pp. 7–10.) *Craine* took a similar view. (*Craine*, *supra*, 35 Cal.App.5th at pp. 758−759.) But as Burns points out, section 1001.35 provides an express statutory statement of legislative intent:

> "The purpose of this chapter is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders."

Cost savings are not mentioned, and the first and third objectives would be promoted by retroactive application. A similar legislative purpose, to stop the revolving door of criminal justice for juveniles, was found in *Lara* to "support the conclusion that *Estrada*'s inference of retroactivity is not rebutted." (*Lara*, *supra*, 4 Cal.5th at p. 309.) Given the express indication of legislative intent, we need not consider legislative history. (See *People v. Cochran* (2002) 28 Cal.4th 396, 400−401.) But even if we considered it, the mention of cost savings in a legislative report does not amount to clear indication of legislative intent overcoming normal application of *Estrada*. (*Buycks*, *supra*, 5 Cal.5th at p. 881.)

15

To the extent section 1001.36 applies retroactively, the People contend remand would be a futile act because Burns has not made a sufficient showing of eligibility. In *Frahs*, remand was warranted where the defendant appeared to meet a single requirement, a diagnosed mental disorder. (27 Cal.App.5th at p. 791, rev. granted.) Here, contrary to the People's claim, the record could be read to support all six threshold eligibility requirements. Attached to Burns's sentencing brief was a postconviction psychological evaluation by Dr. Cynthia Boyd, who diagnosed Burns with a qualifying mental disorder. (§ 1001.36, subd. (b)(1)(A).)[5] Boyd believed that Burns experienced a "fear driven limbic system response" outside his "volitional control" connected to his disorder when Officer Steinbach confronted him, prompting him to flee. (§ 1001.36, subd. (b)(1)(B).)

The record also potentially supports other eligibility criteria. Dr. Boyd noted that Burns "unfortunately" did not seek psychiatric treatment and "hence, his symptoms remained," suggesting his symptoms might respond to treatment. (§ 1001.36, subd. (b)(1)(C).) At sentencing, defense counsel requested that Burns be screened for mental health counseling in prison. This and the fact that Burns seeks diversion on appeal indicate that Burns would likely consent to diversion and treatment. (§ 1001.36, subd. (b)(1)(D)−(E).) Finally, the record does not compel the conclusion that Burns poses an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in

---

5       To protect Burns's privacy interests, we do not include an extended discussion of Dr. Boyd's diagnosis. Based on our review, it is sufficient to note that Boyd's report supports a conclusion that Burns likely suffers from a qualifying mental disorder.

16

the community.  (§ 1001.36, subd. (b)(1)(F).)  Section 1170.18 defines "unreasonable risk of danger to public safety" as the likelihood a defendant will commit a new violent felony within the meaning of section 667, subdivision (e)(2)(C)(iv).  "Section 667, subdivision (e)(2)(C)(iv) enumerates a narrow list of 'super-strike' offenses such as murder, rape and child molestation."  (*People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310.)  Burns's prior burglary convictions are not super-strike offenses.

Next, the People argue remand is futile given the court's comment in striking only one strike prior that Burns posed a danger to the community if he were paroled early.  But the court's evaluation of Burns's dangerousness in connection with his *Romero* motion presents a different question from its consideration of mental health diversion.  It made no findings as to whether, during or after inpatient or outpatient mental health treatment, Burns would "pose an unreasonable risk of danger to public safety" as defined under section 1001.36, subdivision (b)(1)(F).

Pointing to the prior strike, the People further argue that remand would be futile because the Three Strikes Law bars suspending a striker's sentence (§ 667, subd. (c)(2)), which is what they claim diversion would necessitate as to Burns.  Indeed, the Three Strikes Law also expressly prohibits diversion for defendants found to have a prior strike conviction.  (§ 667, subd. (c)(4).)  But the People misconstrue the conditional reversal procedure in *Frahs.*  Burns admitted his prior strikes in May 2018, right after he was convicted.  Section 1001.36 went into effect about a month later, and Burns was sentenced in August.  The *Frahs* procedure conditionally reverses both the convictions and the sentence for an eligibility hearing under section 1001.36.  (*Frahs, supra*, 27

17

Cal.App.5th at p. 792, rev. granted; see *id.* at p. 788 [defendant Frahs was also a striker].)

Conditional reversal thus restores the case to its procedural posture before the jury verdict for purposes of evaluating Burns's eligibility for pretrial mental health diversion. At that point, Burns faced a mere allegation of a prior strike, which was insufficient to preclude a suspended sentence or diversion. (§ 667, subd. (c) [restricting sentencing discretion "if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious or violent felony convictions"].)

In sum, we cannot say the trial court clearly indicated that it would not have granted mental health diversion had it been aware of the option. (Compare *People v. Jefferson* (Aug. 6, 2019, No. F074519) __ Cal.App.5th __ [2019 Cal.App. Lexis 717, at pp. *18–*19].) Given evidence of several of the eligibility criteria, we cannot say remand for consideration of this issue would be futile. Accordingly, we conditionally reverse the judgment with directions for the trial court to consider Burns's eligibility for mental health diversion under section 1001.36. We express no view as to whether Burns will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible.

DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to hold a diversion eligibility hearing under section 1001.36. If the court finds Burns eligible under that statute, it may grant diversion. If Burns then satisfactorily performs in diversion, the court shall dismiss the charges. (§ 1001.36, subd. (e).) However, if the court does not grant diversion, or it grants diversion but Burns fails to satisfactorily complete it (§ 1001.36, subd. (d)), then the court shall reinstate Burns's convictions, conduct further sentencing proceedings as appropriate, and forward a certified copy of the resulting abstract of judgment to the Department of Corrections and Rehabilitation.


DATO, J.

I CONCUR:


GUERRERO, J.

19

Huffman, Acting P.J., Concurring and Dissenting.

I agree with the holding and the analysis of the majority in this case except for part 2 "Mental Health Diversion." I disagree with both the holding and the reasoning in that section. Accordingly, I concur with part 1 of the opinion. As to part 2, I respectfully dissent.

I have previously dissented in this court in cases where the majority has applied the diversion statute retroactively relying on their interpretation of *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299. It is my view that the analysis of the Fifth District Court of Appeal in *People v. Craine* (2019) 35 Cal.App.5th 744, 749, is correct. Unfortunately, I have not been able to persuade my colleagues in this division of the correctness of *Craine* and my agreement with it.

The Supreme Court has granted review in a number of cases including *People v. Frahs* (2018) 27 Cal.App.5th 784, review granted December 27, 2018, S252220. Accordingly, I will limit this dissent to the statement *Craine* was correctly decided and *People v. Weaver* (2019) 36 Cal.App.5th 1103, was not. Ultimately, the high court will decide whether the statute should be applied to post judgment cases. Until the court clarifies the issue I will continue to dissent, albeit briefly.

HUFFMAN, Acting P. J.

Copies to: All parties