Filed 8/18/22  P. v. Washington CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094513 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE014608) |
| v. | |
| LARRY LASHAY WASHINGTON, | |
| Defendant and Appellant. | |

After a bench trial, the court found defendant Larry LaShay Washington guilty of two counts of second degree robbery.  The court found true that defendant personally used a firearm in the commission of each offense.  (Pen. Code, § 12022.53, subd. (b).)[1]

The court sentenced defendant to 12 years in prison: the low term of two years on count 1, plus 10 years for the firearm enhancement.  The court imposed a concurrent two-year sentence on count 2.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal, defendant argues: (1) the trial court violated his Sixth Amendment right to control the objectives of his defense by not asking whether he consented to his counsel's concession of guilt; (2) the court erred by failing to give him full *Boykin-Tahl*[2] advisements because his bench trial was in effect a "slow plea" of guilty; and (3) the court's imposition of certain fines and fees without holding a hearing on his ability to pay them violated his constitutional rights. We will modify the judgment to correct the trial court's miscalculation of the minimum restitution fine and matching suspended $300 parole revocation restitution fine it could impose. We will affirm the judgment as modified.

## I.  BACKGROUND

*A.      The Prosecution's Case*

A bank teller testified that, on August 12, 2019, defendant entered the bank and waived a gun in the air. He threw a bag onto the teller's counter and told her to fill it. She put money from her drawer into the bag. The prosecution played videos from the bank's surveillance cameras.

Another bank employee testified that the man who entered the bank was holding a pistol. He said it was a robbery and instructed everyone to put their hands up. After he obtained cash from two tellers, the man left in a champagne-colored Volkswagen sedan.

A police officer testified that he found an unoccupied Volkswagen sedan matching the description he was provided regarding the bank robbery. The keys were in the ignition and the engine was still running. Inside the sedan, the officer found black tube socks that looked like those that were on the suspect's hands in the surveillance video. The officer ran a records check and learned defendant was the registered owner of the sedan.

---

[2] *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*); *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*).

A second police officer was dispatched to a residential address where he searched defendant. As the officer searched him, defendant said, "this wasn't very well planned."

In a nearby backyard, the first officer found a backpack that contained an unloaded pistol, more than $8,000 in cash, and a tracking chip inside the bills.

Later that day, when a detective interviewed defendant, defendant admitted to committing the bank robbery and identified himself in photos from the surveillance videos. A portion of the video recording of defendant's interview was played for the court.

B.      *The Defense Case*

Defense counsel called three witnesses. Two were witnesses to the robbery who testified that the person who entered the bank never pointed his gun at anyone, but rather pointed it in the air. Defendant's mother testified regarding defendant's recent behavior.

## II.  DISCUSSION

A.      *Defense Counsel's Concession of Guilt*

1.      *Trial Court Proceedings*

Defendant raises two arguments arising out of his counsel's concession of guilt at his bench trial: (1) the trial court should have asked whether he consented to this concession; and (2) the overall effect of this concession and his bench trial was a "slow plea" of guilty necessitating full *Boykin-Tahl* advice and waivers. Before we address these issues, we will summarize the relevant trial court proceedings.

Prior to his bench trial, defendant submitted a trial brief explaining "the purpose for waiving the jury is to present a short version of the robbery as observed by a few of the witnesses in the bank. The defense objective is not to prevail on the question of identity, which is beyond dispute, but to make a case for a stay of the [10-]year firearm enhancement." The brief concluded by stating, "The defendant will be found guilty on both counts and the enhancement will be found to be true. However, mitigating factors will be argued in favor of a request to stay the 10[-]year enhancement."

3

Before defendant formally waived his right to a jury trial, the court advised him of that right on the record and noted, "If you waive the right to a trial by jury on the charges and the enhancements, a judge alone—me—will decide whether you are guilty or not guilty of the charges and whether the enhancements are found to be true or not true." After the court asked defendant if he understood the differences between a jury trial and a bench trial, defendant responded, "I will be found guilty as long as I use what they put down on paper, right?" The court replied, "So we're going to get to that issue in a minute. What I'm focusing on is when witnesses come in. Whether there are going to be 12 members of our community present in the courtroom who are going to decide the charges; or whether I'm going to be the one that decides the charges, whether I'm going to be the fact finder."

The court asked whether defendant was waiving his right to a jury, and he replied, "Yes, ma'am." The court rephrased the question, and he replied, "I believe so." The court asked defendant if he wanted to speak to his attorney.

Defendant did not respond, but defense counsel explained, in part, "The reason we waive the jury trial is there's no contest on the identity issue here. The evidence is overwhelmingly there. This … case is about the use of a firearm and only the use of the firearm. And so, in waiving the jury, and through many discussions with [the prosecutor], we reached this agreement where we would try this to the court, kind of relax a little bit the rules of evidence, put everything before you, things that might not come before a jury. There's no contest here, and you need to hear some of the mitigation. It will be a very short trial . . . and then you will have all the evidence that you will need to decide the firearm issue, because I will be asking your Honor to stay the 10-year enhancement for the gun. [¶] The only way I can accomplish this for Mr. Washington, in my view, is to waive a jury and put it all before you." Defense counsel said he had explained this strategy to defendant multiple times, and defendant was "on board with it, and he understands."

4

Defense counsel then asked his client, "Do you have any problem with not having twelve people decide whether or not you committed this offense?"

Defendant responded, "I mean, at the end of the day I'm not a lawyer or a judge. I'm just somebody that's guilty or not guilty, so I don't really know."

In the ensuing discussion, the court noted it understood the defense strategy as explained by defense counsel then and in defendant's trial brief.

Defense counsel attempted to clarify the waiver of a jury trial to his client: "The jury will decide whether or not you had the firearm during this robbery and displayed it. They will decide that. But whether or not you get punished for that, in addition to other punishment here, is going to be up to this judge. And she'll make that decision based on factors that wouldn't come before this jury." Defendant replied, "And that's what I asked you basically." The court said it was "uneasy with what . . . should be a private conversation between Mr. Washington and Counsel," and the proceedings went off the record for defendant and his counsel to have further discussions. After they were back on the record, defendant waived his right to a jury trial.

When it was time to make a closing argument, defense counsel stated, "I would concede there's evidence to find, beyond a reasonable doubt, that Mr. Washington was the individual inside the bank. The video showed the firearm, the firearm was recovered. So I would concede that the case, the elements of both the case, the crimes charged, and the special allegation, have been proved, and so I think the Court is well aware of what my argument is and will probably come at a later date . . . . I'll just reserve my comments . . . for an appropriate time."

### 2.  *McCoy and Farwell*

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." (*Boykin, supra*, 395 U.S. at p. 243.) These are the right against self-incrimination, the right to trial by jury, and the right to confront one's accusers. (*Ibid.*) But "California law has long been settled: '[T]rial

5

counsel's decision not to contest, and even expressly to concede, guilt on one or more charges . . . is not tantamount to a guilty plea requiring a *Boykin-Tahl* waiver.' [Citations.] The trial court has no duty to inquire whether the defendant agrees with his attorney's concession strategy, at least where there is no explicit indication he disagrees with the approach." (*People v. Burns* (2019) 38 Cal.App.5th 776, 782.) Defendant nonetheless argues the trial court violated his Sixth Amendment right to control the objectives of his defense when it permitted defense counsel to concede his guilt without inquiring whether he consented to the concession. Defendant relies on *McCoy v. Louisiana* (2018) __U.S. __, 138 S.Ct. 1500, 200 L.Ed.2d 821 (*McCoy*) and *People v. Farwell* (2018) 5 Cal.5th 295 (*Farwell*) to support this assertion, but the use of these authorities to support such a claim has been repeatedly rejected. (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1166; *People v. Burns, supra*, at pp. 781-782; *People v. Franks* (2019) 35 Cal.App.5th 883, 889-891; *People v. Lopez* (2019) 31 Cal.App.5th 55, 63-66.)

In *Farwell*, our Supreme Court held that "[a] stipulation that admits all of the elements of a charged crime necessary for a conviction is tantamount to a guilty plea," and therefore "the record must demonstrate that the defendant voluntarily and intelligently waived his constitutional trial rights." (*Farwell, supra*, 5 Cal.5th at pp. 299, 300.) The *Farwell* court explained that the "stipulation conclusively established the stipulated facts as true and completely relieved the prosecution of its burden of proof" because " '[w]hen a defendant stipulates to the existence of a fact in controversy . . . the jury is instructed that it must regard the fact as conclusively proved.' " (*Id*. at p. 300.) Therefore, while the jury in *Farwell* was required to return a verdict, "its limited function did not amount to a jury trial in the constitutional sense." (*Ibid*.) *Farwell* has no application here. Despite defense counsel's concession, the prosecution was not relieved of its burden of proof and "still had to present competent evidence to establish the essential elements of each charge." (*People v. Burns, supra*, 38 Cal.App.5th at p. 783.)

6

*McCoy* is also inapplicable. There, the United States Supreme Court held "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission." (*McCoy, supra*, 138 S.Ct. at p. 1510.) As we have previously underscored, "*McCoy* makes clear . . . that for a Sixth Amendment violation to lie, a defendant must make his intention to maintain innocence clear *to his counsel*, and counsel must override that objective by conceding guilt." (*People v. Franks, supra*, 35 Cal.App.5th at p. 891.) Defendant argues cases holding he must demonstrate he disagreed with counsel's concession were wrongly decided. Defendant asserts there were no means for him to communicate his disagreement. We agree with the People that the record shows defendant had the opportunity to speak to the court and did so before waiving his right to a jury trial. Moreover, *McCoy* demonstrates the possibility of making a disagreement known and requires it to establish a Sixth Amendment violation. (*McCoy, supra*, at pp. 1506, 1509.)

Additionally, defendant argues the authorities requiring him to communicate disagreement are distinguishable because he "did attempt to clarify whether the outcome of his trial was preordained, but the court never answered him." It was clear from the record that defendant was aware of his counsel's strategy; there is no indication he disagreed with it. The fact he sought the court's confirmation that he would "be found guilty as long as I use what they put down on paper" and the court demurred does not indicate he *disagreed* with the strategy. Rather, it indicated defendant was of the impression the evidence against him was overwhelming and that concession was the strategy. We reject defendant's assertion that the trial court was required to ask whether he consented to the concession.

### 3. *Bunnell and "Slow Pleas"*

Defendant argues his bench trial was tantamount to a "slow plea" of guilty that necessitated *Boykin-Tahl* advice and waivers. We disagree.

"Under the rule of *Boykin v. Alabama, supra*, 395 U.S. 238, and *In re Tahl, supra*, 1 Cal.3d 122, as extended in *Bunnell v. Superior Court* (1975) 13 Cal.3d 592 [*Bunnell*] and other cases, 'when the defendant agrees to a submission procedure, such as a guilty plea or a submission on the preliminary hearing transcript, by virtue of which he surrenders one or more of the three specified rights [jury trial, confrontation and privilege against self-incrimination]' [citation], the record must reflect that he was advised of and personally waived the applicable right or rights." (*People v. Robertson* (1989) 48 Cal.3d 18, 39.)

"A 'submission' within the meaning of *Tahl, supra*, 1 Cal.3d 122 and *Bunnell, supra*, 13 Cal.3d 592 occurs when a defendant gives up his right to trial by jury and, unless otherwise specified, the right to present additional evidence in his own defense and agrees the court can decide the case on the basis of the transcript of prior proceedings. [Citations.] Although the parties may reserve the right to present additional evidence, the essential components of a submission are waiver of a jury trial and, with respect to the witnesses who testified in the prior proceedings, waiver of the right to confrontation in the present proceeding. [Citations.] When the submission is a 'slow plea' or 'tantamount to a plea of guilty,' the defendant also gives up his privilege against self-incrimination." (*People v. Robertson, supra*, 48 Cal.3d at pp. 39-40.) Our Supreme Court has "suggested that 'a "slow plea" of guilty' may occur where a defendant submits the issue of his or her guilt of the charged offense on the basis of the police report [citation] or 'other documentation' [citation], or where a defendant in a capital case submits the issue of penalty on the transcript of prior proceedings." (*People v. Cunningham* (2015) 61 Cal.4th 609, 638.)

Here, defendant agreed to, and proceeded with, a court trial. He did not agree to submit the truth of the allegations on agreed evidence, and his waiver of a jury was not a consequence of any such agreement. Rather, the prosecution was required to put on its case. In doing so, it presented overwhelming evidence of defendant's guilt including

8

defendant's own confession and identification of himself in surveillance videos. Defense counsel's concessions were a result of the fact that the evidence the prosecution introduced was overwhelming. Similarly, defendant's criticism of his counsel's evidence and brief cross-examinations are unavailing because both were appropriate considering the evidence against him. As the People explain, "[i]n light of the strong and uncontradicted evidence implicating [defendant] in the robberies, counsel did not have a defense to present, but he strategically focused on highlighting the mitigating aspects of the robberies and [defendant]'s firearm use. Counsel's strategy in this regard did not transform the trial into a slow plea." Instead, "defendant enjoyed a full court trial during which he confronted, cross-examined, and attempted to impeach the prosecution witnesses, and exercised his right against self-incrimination by not taking the witness stand. Having fully exercised these rights, there was no need for defendant to waive them." (*People v. Cunningham, supra*, 61 Cal.4th at pp. 638-639.)

B.     *Fines and Fees*

At sentencing, the trial court stated, "[t]he restitution fine [(§ 1202.4, subd. (b))], because there are two felony convictions, is reduced to the statutory minimum of [$]350 times two. An additional restitution fine of the same amount is imposed and stayed unless and until [defendant's] parole is revoked, and that's pursuant to [section] 1202.45. So again, that's a total of [$]700 stayed." The court asked whether defendant had any objections or requests for modification based on what appeared in the probation report. Defense counsel stated, "I would like the Court to minimize fines whenever possible due to the fact [defendant is] not employed and may not be, once he's released, for a period of time." The court then ordered defendant to pay an $80 court operations assessment (§ 1465.8) and a $60 court facilities assessment (Gov. Code, § 70373). Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and related cases, defendant argues imposition of these fines and fees without holding a hearing on his ability to pay them violated his constitutional rights. To the extent we deem his trial counsel's

comments at sentencing insufficient to preserve this claim on appeal, defendant argues his trial counsel rendered ineffective assistance by not objecting to the imposition of these fines and fees without the court first determining whether he was able to pay them.

Before we address these issues, we will correct the restitution fines imposed by the court. The abstract of judgment and minute order indicate the restitution fine (§ 1202.4, subd. (b)) and parole revocation restitution fine (§ 1202.45) imposed by the court were each $600. "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) However, the People argue that in orally imposing what it described as a statutory minimum of $700, "[t]he court misspoke, as the statutory minimum for the restitution fine is $300 *for each felony*." (Italics added.) We agree the trial court misspoke, but the People are incorrect about the statutory minimum. Section 1202.4, subdivision (b) requires the court to impose a restitution fine "[i]n every *case* where a person is convicted of a crime." (Italics added.) Further, "[i]f the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300)." (§ 1202.4, subd. (b)(1).) Thus, the minimum restitution fine in this case, which is what the record indicates the trial court attempted to orally impose, is only $300. The parole revocation restitution fine under 1202.45 is assessed "in the same amount." (§1202.45, subd. (a).) We will modify the judgment accordingly.

We now return to defendant's argument under *Dueñas, supra*, 30 Cal.App.5th 1157. The *Dueñas* court held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court also held "that although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court

10

holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) We are not persuaded that the analysis used in *Dueñas* is correct.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but not restitution fines under section 1202.4. (*Kopp, supra*, at pp. 95-96.)

In the meantime, we join those authorities that have concluded the principles of due process do not require determination of a defendant's present ability to pay before imposing the fines and assessments discussed in *Dueñas*. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-282; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326-329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068-1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Having done so, we reject defendant's *Dueñas* challenge and his derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless argument does not demonstrate ineffective assistance of counsel].)

To the extent defendant further argues, under *People v. Cowan* (2020) 47 Cal.App.5th 32, review granted June 17, 2020, S261952, that he was entitled to make a record of his inability to pay under an Eighth Amendment excessive fines analysis, we find this citation unhelpful and the argument incomplete. The *Cowan* court held that "[b]ecause ability to pay is an element of the excessive fines calculus under both the federal and state Constitutions, . . . a sentencing court may not impose court operations or facilities assessments or restitution fines without giving the defendant, *on request*, an opportunity to present evidence and argument why such monetary exactions exceed his

11

ability to pay." (*Id.* at p. 48, italics added.) Defendant's briefing does not suggest defendant had additional evidence or argument to present on this point or any likelihood his counsel would have prevailed under an excessive fines analysis. We cannot conclude any error occurred or that defendant's trial counsel rendered ineffective assistance by not raising the issue further. (See *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different"].)

## III.  DISPOSITION

The judgment is modified to impose only a $300 restitution fine and matching suspended $300 parole revocation restitution fine. As modified, the judgment is affirmed. The trial court is directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


/S/

_____

RENNER, J.



We concur:


/S/

_____

DUARTE, Acting P. J.


/S/

_____

HOCH, J.