Filed 3/18/26  P. v. Aguilera CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064382 |
| v. | (Super. Ct. No. 22CF3758) |
| SEAN ANTHONY AGUILERA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert A. Knox, Judge. Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Kelley Johnson and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Sean Anthony Aguilera appeals his convictions on three counts arising from a single night when he assaulted three different women. He was convicted of attempted second degree robbery (count one; Pen. Code,[1] §§ 664, 211, 212.5, subd. (c)); assault with force likely to produce great bodily injury (count two; § 245, subd. (a)(4)); battery (count three; § 242); and sexual battery (count four; § 243.4, subd. (e)(1)). He was sentenced to state prison for three years. On appeal, Aguilera contends there was insufficient evidence to support the sexual battery count and that his attorney improperly conceded guilt as to one of the counts during closing argument. We conclude these arguments lack merit and affirm the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

We focus on the facts pertinent to this appeal.

I.

COUNT ONE—ATTEMPTED SECOND DEGREE ROBBERY

In brief, as to count one, on October 21, 2022, L.K. went for a walk from her Tustin home between 5:00 and 6:00 p.m. As she was walking, a man on a skateboard suddenly grabbed her wrist and attempted to take her watch. After she screamed, the man released her. L.K. identified Aguilera in court as the man who tried to take her watch.

II.

COUNT FOUR—SEXUAL BATTERY

On the same evening, at approximately 6:30 p.m., P.A. was walking to a pharmacy in Tustin. As P.A. passed by an empty building, she felt an arm touch her. She turned around quickly to push the person away. A

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

man she had never seen before started saying something about "Jason" and tried to grab her. He said, "'Let's go with Jason,'" and she responded that she did not know Jason. He had a skateboard with him. P.A. described the man's demeanor as aggressive and scary. He stood very close to her, and he looked angry.

In response to her attempts to move away, the man grabbed her again and repeated statements about going with Jason. He touched her inner thigh or groin, and also grabbed her buttocks. P.A. ran away and eventually called 911. She identified Aguilera in police custody later that night, and also identified him in court.

III.

COUNTS TWO AND THREE—ASSAULT WITH FORCE LIKELY TO PRODUCE GREAT BODILY INJURY AND BATTERY

At approximately 8:15 p.m., the same night, M.G., who was eight months pregnant, was walking through the parking lot of her Tustin apartment complex with her mother. She saw a man standing on the roof or the top of the carports, holding a piece of wood. Once the man saw M.G. and her mother, he jumped off the carport and walked towards them. She asked what he was doing, and he approached her and struck her in the stomach with his hand or fist. The man said, "'I just hit your baby, bitch.'" She asked him why he did that, and he replied with "'Ask your mom. Ask your mom.'" Neighbors began to arrive in the area, and the man ran away.

The blow caused M.G. pain and contractions, and she felt dizziness, cramps, and hot flashes. M.G. identified defendant the night of the assault and in court.

After this incident, based on reports to the police, a Tustin Police Department patrol officer located Aguilera, who matched the description of

3

the suspect. The officer detailed Aguilera, who was ultimately arrested, and later identified him at trial.

Aguilera was charged with the four counts identified above. He was convicted on all four counts following a jury trial. Aguilera was sentenced to a total of three years. He now appeals.

DISCUSSION

I.

SUFFICIENCY OF THE EVIDENCE ON SEXUAL BATTERY

Aguilera's first contention on appeal is that there was no evidence he "had a sexual intent when he made brief contact with [P.A.]'s groin and buttocks."

*A. Standard of Review*

"In reviewing the sufficiency of the evidence to support a conviction, we determine "'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.'" [Citations.] Under such standard, we review the facts adduced at trial in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. [Citation.] The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. [Citation.] [¶] In considering the sufficiency of the evidence, we cannot reweigh the evidence, as the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. [Citation.] Rather, we simply consider whether any rational trier of fact could have found the essential elements of the charged offenses beyond

4

a reasonable doubt. [Citation.] Unless it is clearly shown that 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict,' the conviction will not be reversed." (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.)

The standard of review is the same even when the case relies on circumstantial evidence. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572.) We accept logical inferences that the jury might have drawn from such evidence. (*Id.* at p. 1573.)

## B. Relevant Law

"(1) Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, . . . is guilty of misdemeanor sexual battery . . . . [¶] (2) As used in this subdivision, 'touches' means physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." (§ 243.4, subd. (e).) "Intimate part" includes the "sexual organ . . . or buttocks." (§ 243.4, subd. (g)(1).)

This offense is a specific intent crime, and must be committed for the sexual purpose set forth in the statute. (*People v. Chavez* (2000) 84 Cal.App.4th 25, 29.)

## C. Sufficiency of the Evidence

Aguilera contends the area of P.A.'s body where Aguilera grabbed her was on the same side of her body where she was wearing her purse, and any contact was incidental while he reached toward her purse. He argues there was nothing to indicate a sexual intent because the contact was not prolonged and he did not stroke or fondle her. He further contends the lack of

admissions and "corroborating evidence," and the brevity of the touches indicates a lack of substantial evidence.

We disagree. In a case where direct evidence of intent can only come in the form of an inculpatory admission, the defendant's intent may "be inferred from the act itself together with its surrounding circumstances." (*In re Shannon T.* (2006) 144 Cal.App.4th 618, 622.) There was evidence that Aguilera first touched P.A.'s groin, then her buttocks. The jury could have reasonably found, based on the sequence of events, that Aguilera had the requisite sexual intent.

Further, the statute does not only include sexual gratification within its ambit. It also includes sexual *abuse*, which "encompasses a purpose of insulting, humiliating, intimidating, or physically harming a person sexually by touching an 'intimate part' of the person." (*In re Shannon T., supra,* 144 Cal.App.4th at p. 621.) Aguilera's argument admits he grabbed P.A. as part and parcel of a robbery attempt, "when he reached toward her purse." Accordingly, the jury could have found his intent was sexual abuse in furtherance of the robbery. Grabbing a person's groin and buttocks is insulting, humiliating, and intimidating, and the jury could reasonably find it to have been sexual abuse in an effort to facilitate the theft of P.A.'s purse.

Under either theory, there was sufficient evidence to support the sexual battery conviction.

## II.

### MISDEMEANOR CONCESSION

During closing argument, defense counsel stated: "I will tell you this now. On Count 3, you can find Mr. Aguilera guilty of that. He touched her, and he should not have. And this goes to [M.G.], the woman who was at the time pregnant. You can find him guilty of simple battery on Count 3. He

6

is not guilty of Count 2; that's the assault with force likely to commit great bodily injury." Counsel went on to argue the facts relating to great bodily injury, concluding: "So from the surrounding instance and from what [M.G.] told us and from what you heard, yes, [Aguilera] committed a simple battery on [M.G.], but he did not commit an assault with force likely to incur great bodily injury. There's just not enough here. There's just not enough."

Aguilera contends this was an involuntary waiver of his right to have the charges proved by the prosecution. He relies on *McCoy v. Louisiana* (2018) 584 U.S. 414 (*McCoy*), for the proposition that his fundamental right to decide whether to plead guilty and/or persist in a plea of not guilty was violated by counsel's statement, which was offered with no waiver.

*McCoy* was a death penalty case. (*McCoy*, *supra*, 584 U.S. at p. 418.) After the defendant was convicted of three counts of murder, his counsel, in the penalty phase, decided that given the state of the evidence, "absent a concession at the guilt stage that [the defendant] was the killer, a death sentence would be impossible to avoid at the penalty phase." (*Ibid*.) During his penalty phase opening statement, he told the jury that "the evidence is 'unambiguous,' [that] 'my client committed three murders.'" (*Id*. at pp. 419–420.) Outside the jury's presence, the defendant objected. (*Id*. at p. 419.) He testified during the penalty phase, maintaining his innocence and raising an alibi defense. (*Id*. at p. 420.) The Louisiana Supreme Court affirmed, concluding admitting guilt was within counsel's purview.

The United States Supreme Court reversed, holding "that a defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." (*McCoy*, *supra*, 584

7

U.S. at p. 417.) The Court reasoned, "With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt." (*Id.* at pp. 417–418.)

This rule, however, did not change the essential balance between counsel and the client. Counsel maintained a "trial management role" which included the role of deciding, for example, "'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" (*McCoy*, *supra*, 584 U.S. at pp. 422–423.)

Aguilera admits that *McCoy*'s holding "relied upon the defendant's protestations of innocence in reaching its decision." He argues we should extend it to require an express waiver, but in doing so he asks us to disregard settled California law on the question. In *People v. Burns* (2019) 38 Cal.App.5th 776, which was decided after *McCoy* and discussed that case at length, the court held that defense counsel's express concession of two of the charged offenses was not tantamount to a guilty plea requiring the defendant's consent. (*Id.* at p. 782.) Further, "The trial court has no duty to inquire whether the defendant agrees with his attorney's concession strategy, at least where there is no explicit indication he disagrees with the approach." (*Id.* at pp. 782–783.)

Multiple California cases agree that defense counsel's statements during argument are not tantamount to guilty pleas and do not require consent or waiver. (See, e.g., *People v. Villa* (2020) 55 Cal.App.5th 1042; *People v. Lopez* (2019) 31 Cal.App5th 55.) Aguilera does not cite any cases that adopt his proposed approach. We find no violation of the key principles set forth in *McCoy* in the instant case. "[F]or a Sixth Amendment violation to

8

lie, a defendant must make his intention to maintain innocence clear *to his counsel*, and counsel must override that objective by conceding guilt." (*People v. Franks* (2019) 35 Cal.App.5th 883, 891; see *McCoy, supra,* 584 U.S. at p. 23.) There are no facts to support such the contention that Aguilera was set on maintaining his innocence at all costs.[2] If such facts exist outside the record, Aguilera is, of course, free to pursue a habeas petition.

Aguilera also argues that for essentially the same reasons, we should find ineffective assistance of counsel. He identifies the deficient performance as "being unfamiliar with the rule of *McCoy*." As we have concluded that *McCoy* does not apply under these facts, we find no ineffective assistance of counsel.

---

[2] In this appeal, Aguilera appears to concede he committed the attempted robbery alleged in count one and contends he attempted a similar robbery in his argument on the sexual battery count. "The conduct toward [P.A., the victim in the sexual battery count] was similar to the conduct towards [L.]K. in count [one], when [Aguilera] tugged at her fitness watch." While not conclusive, it does not support the contention that Aguilera was or is dead set on maintaining his innocence.

DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.