Filed 6/6/23  P. v. Burns CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>DERRICK LYLE BURNS,<br><br>     Defendant and Appellant. | D080239<br><br><br><br>(Super. Ct. No. SCD273861) |

APPEAL from an order of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Kathryn Kirschbaum and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Derrick Lyle Burns appeals the denial of his petition for mental health diversion pursuant to Penal Code section 1001.36.[1]  The trial court concluded that Burns failed to make a prima facie showing he could safely be treated in the community without posing an unreasonable risk to public safety.  (§ 1001.36, subds. (c)(4), (e).)  Given his extensive criminal history, and in particular the circumstances of the current crimes, we cannot say this was an irrational conclusion.  Accordingly, we affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Burns repeatedly struck his girlfriend, prompting bystanders to call 911.  When officers responded to the scene, Burns led them on a high-speed vehicular chase.  Toward the end of the chase, both he and his girlfriend jumped from the moving vehicle shortly before it collided unmanned with an oncoming car.  Burns was eventually apprehended on foot and charged with various crimes.  A jury convicted him of false imprisonment (§ 236), evading a police vehicle (Veh. Code, § 2800.2, subd. (a)), corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)), and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)).  Burns admitted two prior strike convictions.  The trial court struck one of them at sentencing and imposed a prison term of 19 years, eight months.  (See *People v. Burns* (2019) 38 Cal.App.5th 776, 780 (*Burns I*).)

In the prior appeal, Burns argued the case should be remanded for mental health diversion proceedings under newly enacted section 1001.36. (*Burns I, supra,* 38 Cal.App.5th at p. 785.)  We agreed with him that the new statute applied retroactively to nonfinal judgments on direct appeal.  (*Id.* at

---

[1]     Further undesignated statutory references are to the Penal Code.

p. 786; see *People v. Frahs* (2020) 9 Cal.5th 618, 631–632 (*Frahs*).) We read the record to include evidence that could bear on each of the six eligibility criteria. (*Burns I*, at pp. 788–789.) Attached to Burns's sentencing brief was a postconviction psychological evaluation by Dr. Cynthia Boyd, in which she diagnosed Burns with PTSD from a 2016 gunshot wound and concluded he had experienced a "fear driven limbic system response" outside his "volitional control" when confronted by police. (*Id*. at p. 788.) His PTSD symptoms lingered because he did not seek psychiatric treatment. Based on this evidence, we could not conclude that remand would be futile and conditionally reversed for an eligibility hearing. (*Burns I,* at p. 790; see *Frahs*, at p. 640.) We "express[ed] no view as to whether Burns [would] be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it [found] him eligible." (*Burns I*, at p. 790.)

On remand, Burns filed a petition for diversion, attaching Dr. Boyd's 2018 evaluation. He also attached a 2021 evaluation by Dr. Robert Kelin. After meeting with Burns, Kelin concluded he was "experiencing some type of psychopathology" and hearing voices. Kelin opined that Burns struggled to manage his internal stimuli, which led him to behave erratically. He also seemed depressed, but that could stem from being incarcerated. Kelin diagnosed Burns with schizophreniform disorder, conduct disorder, and amphetamine use and could not rule out posttraumatic stress. Burns's primary psychopathology included "auditory and visual hallucinations as well as delusions of being contacted by his ancestors," which led him to be "overwhelmed by problems" and turn to drugs or act out. Kelin believed Burns needed more intensive mental health treatment, including structured therapy. He also thought Burns would benefit from drug treatment, as Burns continued to use alcohol, marijuana, and methamphetamine in prison.

3

The People opposed Burns's petition. They questioned whether he sufficiently established a qualifying mental disorder or a link between the crimes and his mental health. Moreover, they claimed Burns posed an unreasonable risk of danger to public safety if treated in the community based on his violent criminal history and current offenses, which were committed while on active parole. To the extent Burns was deemed statutorily eligible for diversion, the People urged the court to exercise its discretion to deny the request.

The matter was heard at a March 2022 video hearing, where the trial court summarily denied Burns's petition on the papers, rejecting the defense request to present live testimony. The court did not deem this a close case, finding no prima facie showing as to any of the six threshold eligibility criteria under section 1001.36. Because only three of the criteria are contested on appeal, we highlight those.[2]

As to the first eligibility factor under section 1001.36, the court determined that Burns failed to make a prima facie showing he suffered from a qualifying mental disorder. (§ 1001.36, subd. (b)(1).) The two reports he submitted gave conflicting diagnoses. Dr. Boyd diagnosed Burns with PTSD and *ruled out* delusional and paranoid thinking. In the court's view, that finding was not surprising, where Burns told Dr. Kelin that his hallucinations were attributable to methamphetamine-induced psychosis

---

[2] Both Burns and his counsel addressed the court at the hearing. At various points, Burns appeared confused as to what a prima facie showing entailed. He read the opinion in *Burns I*, which he mistakenly referred to as a Supreme Court ruling, as having decided that he met all six eligibility criteria for mental health diversion. To the contrary, *Burns I* left it to the trial court to determine whether Burns established a prima facie showing of eligibility, and if he did, whether to exercise its discretion to grant diversion. (*Burns I, supra,* 38 Cal.App.5th at p. 790.)

4

while in prison. Noting that both psychologists had relied primarily on Burns's own statements in reaching their conclusions, the court discounted both reports, noting Burns had been shown to lie. When Burns interjected that he never lied to Boyd, the court muted his microphone and commented that his outburst was not reflective of "somebody who has mental health issues," but rather "someone who's unhappy about the court's ruling." The court also reasoned that even accepting Boyd's account, PTSD could not explain his violent assault on his girlfriend *before* police arrived and drew weapons.

Moving on, the court determined that Burns failed to link any mental disorder to the commission of the crimes. (§ 1001.36, subd. (b)(2).) In its view, the trial evidence proved that Burns fled from police because he was on parole, had just beaten his girlfriend in public, and knew the consequences of a new felony case. He was on cocaine and Xanax at the time of the offense and went to great lengths to get away, nearly causing multiple deaths. Again, Burns's violent acts began before police arrived. While Dr. Boyd linked Burns's PTSD to his flight on seeing police draw a gun, that did not explain his earlier criminal conduct.

Beyond any other factor,[3] the court zeroed in on whether Burns proved a prima facie case that he could safely be treated in the community. On this, the court readily found that diversion would pose an unreasonable risk of danger to public safety, as defined in section 1170.18. (§ 1001.36, subd. (c)(4).) Burns's criminal history was "extensive and violent," and he was on

---

[3] The court briefly addressed whether Burns had made a prima facie showing that his symptoms would respond to treatment or that he consented to treatment, finding he failed to show either criteria. It also faulted Burns for not providing a specific treatment plan. These findings are not defended by the People on appeal.

active parole for his two prior strike convictions at the time of the offenses. By jumping out of a moving car, he "endangered the lives of countless citizens" as the car "continued down the street like an unmanned missile." Earlier in the day, he violently assaulted his then-girlfriend after she announced being pregnant. Burns's poor conduct persisted in prison with Burns using methamphetamine, drinking alcohol, and taking morphine pills. "If this is his conduct in prison," the court wondered aloud, "imagine if he were in the community." It harbored "no doubt" Burns would commit a super strike offense if treated in the community. "In fact," the court continued, "looking at the Defendant's conduct in prison since the sentencing, . . . had I known about that conduct and the Defendant's complete lack of any attempts at rehabilitation, this Court would have sentenced him to 25 to life as requested by the People to ensure that the public is safe." The court believed that Burns should serve his entire 19 year, eight month sentence, stating "[a]nything shorter will present a grave danger to the public."

In short, the court agreed with the People that "this case does not fall within the spirit of the pretrial mental health diversion statutes." Finding Burns failed to meet his burden to show that diversion was warranted in this case, the court denied his petition.

DISCUSSION

Burns contends he made a prima facie showing as to each of the six eligibility factors under section 1001.36; he believes the trial court found otherwise by making improper credibility determinations. He further contests the trial court's decision to rule on the papers without permitting live testimony by Dr. Boyd. We reject both claims. The court was not required to receive live testimony in evaluating whether Burns made a prima facie case. And it reasonably found on the papers that he failed to show he

6

could safely be treated in the community as required by section 1001.36, subdivision (c)(4).

A.    *Overview of Mental Health Diversion Under Section 1001.36*

The Legislature enacted section 1001.36 in 2018 to provide pretrial mental health diversion for defendants suffering from mental disorders that were a significant factor in the charged offense.  (Stats. 2018, ch. 34, § 24 (Assem. Bill No. 1810).)  "The primary purposes of the legislation are to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services."  (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886, citing § 1005.35.)

Where a defendant seeks diversion, a trial court may at any time evaluate whether he or she can make a prima facie showing of eligibility and suitability for it.  (§ 1001.36, subd. (e).)  "The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel.  If a prima facie showing is not made, the court may summarily deny the request for diversion . . . ."  (*Ibid.*)[4]

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense

---

[4]    Based on this plain statutory language, we readily dispose of Burns's second contention on appeal.  Because the trial court was not required to hold an evidentiary hearing in evaluating a prima facie case (*People v. Bunas* (2022) 79 Cal.App.5th 840, 863−865 (*Bunas*)), it did not err in rejecting the defense request to allow Dr. Boyd to testify.  Even otherwise, there could be no prejudice from that evidentiary decision where counsel admitted Boyd would not provide "any further elaboration or any additional information that was not contained in her report."

7

are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion." (*Frahs, supra,* 9 Cal.5th at p. 627.) A grant of pretrial diversion is discretionary and not mandatory, even where a defendant meets all of the threshold requirements. (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 (*Gerson*).)

Where granted, diversion consists of the defendant receiving treatment in a community mental health program for up to two years. (*Frahs, supra,* 9 Cal.5th at p. 627; § 1001.36, subd. (f)(1)(C).) The court may reinstate criminal proceedings if the defendant is charged with another crime or otherwise performs unsatisfactorily during diversion. (§ 1001.36, subd. (g).) But if the defendant performs satisfactorily, the court will dismiss criminal charges at the end of the diversionary period. (*Id.,* subd. (h).)

Section 1001.36 has been amended several times in its short history. At the time we decided *Burns I* and when the trial court held proceedings on remand, a defendant had to show six eligibility criteria to establish a basis for pretrial diversion. (§ 1001.36, former subd. (b) as amended by Stats. 2018, ch. 1005, § 1 (Sen. Bill No. 215) effect. Jan. 1, 2019 and Stats. 2019, ch. 497, § 203 (Assem. Bill No. 991) effect. Jan. 1, 2020.) The statute has since been substantially rewritten. (See Stats. 2022, ch. 735, § 1 (Sen. Bill No. 1223) effect. Jan. 1, 2023.) The threshold requirements are now broken out into two bearing on a defendant's *eligibility* for diversion (§ 1001.36, subd. (b)) and four pertaining to a defendant's *suitability* for it (*id.,* subd. (c)). Eligibility factors evaluate whether defendant has a qualifying mental disorder that was a significant factor in the crime. Suitability factors evaluate the defendant's treatment prospects and public safety risk. (*Id.,*

subds. (b)−(c).)  While potentially significant in other contexts, these changes do not affect our analysis on appeal because at all relevant times, the trial court could reject diversion if a defendant failed to show he or she would not pose "an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community."  (*Id.*, subd. (c)(4).)[5]

We review a trial court's denial of pretrial mental health diversion for abuse of discretion.  (See § 1001.36, subd. (a) ["the court may, in its discretion, . . . grant pretrial diversion"]; *People v. Moine* (2021) 62 Cal.App.5th 440, 448−449 (*Moine*).)  "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence."  (*Id.* at p. 449.)  On appeal from a trial court's denial of diversion, the defendant bears the burden to prove both abuse of discretion *and* prejudice.  (*Bunas, supra,* 79 Cal.App.5th at p. 867 [court's indication that it would not grant diversion irrespective of eligibility demonstrated lack of prejudice].)

---

[5]   Were we to wade into other threshold factors, the changes might matter.  Previously it was up to the court to decide whether the defendant sufficiently proved a mental disorder and demonstrated that it was a significant factor in the crimes.  (§ 1001.36, former subd. (b)(1)(A)—(B), as amended by Stats. 2019, ch. 497.)  Now if a defendant has been diagnosed with a mental disorder in the last five years, the court "shall find" that it was a significant factor in the commission of the charged crimes absent clear and convincing evidence otherwise.  (§ 1001.36, subd. (b)(1)—(2), as amended by Stats. 2022, ch. 735, § 1.)  But because we can uphold the trial court's determination based on its assessment of Burns's safety risk alone, we need not reach any other factors.

B.  *The Trial Court Reasonably Determined That Burns Failed to Make a Prima Facie Case That He Could Safely be Treated in the Community.*

To be suitable for diversion, the court must find that the defendant "will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)[6]  In making this determination, the court may consider the defendant's history of violence and criminal activity, the offenses charged, opinions of the parties and mental health professionals, and any other relevant factor. (*Ibid.*) Through its cross reference to section 1170.18, the statute defines an unreasonable risk of danger to public safety to mean an unreasonable risk that a defendant will commit a "super strike" offense designated in section 667, subdivision (e)(2)(C)(iv), including certain sexually violent offenses, homicide or attempted homicide, assault with a machine gun on a police officer or firefighter, and any serious or violent felony punishable by death or life imprisonment. (See *Moine, supra,* 62 Cal.App.5th at pp. 449−450.)  In other words, "the risk of danger is narrowly confined to the likelihood the defendant will commit a limited subset of violent felonies." (*Id.* at p. 450.)

Courts have construed this requirement strictly.  In *Moine*, the trial court denied diversion on the sole basis that the defendant was too dangerous to be treated in the community. (*Moine, supra,* 62 Cal.App.5th at p. 449.) The appellate court rejected that finding where none of the defendant's three past misdemeanor convictions for drug or alcohol offenses or prior hit-and-run involved a violent felony, let alone a super strike felony.  While the pending charges involved allegations of violence and threats of violence,

---

6    Section 1170.18 lays out the recall procedure for theft offenses reclassified under Proposition 47, with subdivision (c) defining the term " 'unreasonable risk of danger to public safety.' "

10

they were not super strike offenses. Nothing in the record suggested the defendant was likely to commit a super strike offense if he received mental health treatment in the community; to the contrary, two psychiatrists found him at low risk for future assault. (*Id.* at pp. 450−451.) The trial court had released the defendant into the community on bond for more than two years, indicating it shared that view. (*Id.* at p. 451.) The *Moine* court distinguished other cases involving defendants with long criminal histories involving violent felonies. (*Ibid.*) Because that was the sole basis for the trial court's ruling, the *Moine* court remanded for a new hearing to consider the defendant's eligibility for diversion. (*Id.* at p. 452.)

*People v. Williams* (2021) 63 Cal.App.5th 990 (*Williams*) was similar and followed *Moine.* The defendant stalked, harassed, and threatened a married couple who owned an autobody shop in retaliation for what he perceived to be racist treatment. (*Williams*, at p. 993.) The trial court denied diversion, concluding he posed an unreasonable risk to public safety. (*Id.* at p. 1000.) This finding was rejected on appeal under *Moine.* (*Williams*, at p. 1003.) As the court explained, the defendant had no criminal record apart from that case and had never actually assaulted anyone or engaged in violence. (*Ibid.*) The defendant's charges were not super strike offenses; he showed remorse; the uncontroverted opinion of two mental health professionals was that he posed a low risk to public safety; there was no evidence that he owned or had access to weapons; and he was released on bond for more than two years without incident. (*Ibid.*)

Our court reached a slightly different result in *Bunas, supra,* 79 Cal.App.5th 840. We found that the court erred in relying on the general objectives of sentencing (Cal. Rules of Court, rule 4.410) in denying diversion. Nevertheless, that error was harmless given the defendant's violent history

11

and the court's statement that the charged offenses were not suitable for diversion. The court's comments suggested it did not intend to grant diversion irrespective of any improper reliance on sentencing objectives. (*Bunas,* at p. 861.)

Two Proposition 47 cases distinguished by *Moine* also offer useful perspective. (See *Moine, supra,* 62 Cal.App.5th at p. 451.) In *People v. Hall* (2016) 247 Cal.App.4th 1255, the trial court reasonably found the defendant ineligible for resentencing where he had a decades-long history of felony convictions, including two prior strike convictions, and his criminal behavior had become increasingly violent. In the most recent offense resulting in a prison term, he had pressed a knife to the victim's stomach while he was on probation; in a prior robbery, he threatened to kill his victim. (*Id.* at pp. 1265–1266.) Based on his recent criminal behavior and repeated failure to rehabilitate, the trial court could reasonably find that he presented "an elevated—and escalating—risk of not only threatening violence, but also using deadly force." (*Id.* at p. 1266.) The court rejected defendant's claim that "unreasonable risk to public safety" under section 1170.18 should only apply to offenders who had previously committed a super strike offense. (*Hall,* at p. 1266.)

*People v. Jefferson* (2016) 1 Cal.App.5th 235 (*Jefferson*) reached a similar conclusion. A defendant who stole a printer ink cartridge from a Kmart was denied diversion on the ground he posed an unreasonable risk of danger to public safety. (*Id.* at p. 245.) The trial court reasonably relied on his past robbery, assault, and battery convictions, combined with his multiple rule violations in prison and multiple parole violations to conclude he was likely to commit a super strike if resentenced. (*Ibid.*) The defendant personally used a firearm in the prior robbery and personally inflicted great

bodily injury on the robbery victim. Based on this evidence, the trial court could reasonably determine that the defendant was likely to commit murder, attempted murder, or solicitation to commit murder if resentenced under Proposition 47. (*Jefferson*, at p. 245.)

Turning to our record, Burns maintained in his moving brief that the current charges, while serious, were done under the influence of drugs before he began addressing his sobriety or mental health in custody. While his prior convictions were serious in nature, none involved "super strike" felonies. In Burns's view, there was no evidence to suggest he was likely to commit a violent felony in the future, and any such risk would be diminished by mental health treatment.

By contrast, the People relied on Burns's criminal history to argue that treating him in the community would pose an unreasonable safety risk. As a juvenile, Burns robbed a convenience store while shouting gang slurs and threatening to harm the store clerk. He also committed a residential burglary and commercial theft. As an adult, Burns committed two residential burglaries in 2013 for which he was sentenced to three years, four months in prison. After being released and while on parole, Burns was stopped for possessing a firearm and committed another residential burglary.

Apart from the serious nature of the current offenses, the People additionally detailed uncharged criminal conduct. In 2017, while on parole, Burns was stopped in a vehicle with his gang affiliates in rival gang territory. A search of the vehicle revealed a loaded semiautomatic handgun and an additional loaded magazine in a backpack near where Burns was seated at the time of the stop. As the occupants of the vehicle were being arrested, Burns coached his girlfriend to claim ownership of the firearm. Postconviction, Burns had accumulated fresh charges and prison rule

13

violations for possessing methamphetamine and physically resisting and trying to spit on an officer who attempted to place him in handcuffs. A review of his prison records showed five disciplinary penalties over a six-month period in 2019.

The People described Burns's criminal history as "extensive and violent" and asserted it "demonstrate[d] a predatory nature that repeatedly put members of the community at risk." He was on active parole for two strike priors when committing the current offenses, which "endangered the lives of countless citizens" and began with Burns "violently assaulting his then-girlfriend after she'd announced being pregnant."

Burns bore the burden of establishing a prima facie case of eligibility and suitability for mental health diversion. (*Frahs, supra,* 9 Cal.5th at p. 627.) That meant he had to prove that treating him in the community would not unreasonably risk his commission of a super strike offense. Given our record, the trial court could properly determine that Burns failed to meet his moving burden. The fact that Burns had not previously been convicted of a super strike offense did not preclude the court from concluding he stood at risk of committing one in the future. (*People v. Hall, supra,* 247 Cal.App.4th at p. 1266.) In the current case, Burns physically assaulted his pregnant girlfriend, led officers on a high-speed chase, and jumped from a moving vehicle that then hurtled toward an unsuspecting victim. Either of the two aggravated assaults (against the girlfriend or the driver of the second vehicle) could easily have resulted in death. While neither did, meaning Burns has never been convicted of a super strike, the court properly weighed the dangerousness of his conduct in evaluating his future risk of committing a super strike offense.

14

Burns committed these and other offenses while on parole and in the past had coached his girlfriend to accept responsibility for his crimes. His poor behavior continued in custody, where he managed to physically resist officers, rack up rule violations, and use methamphetamine. While the evaluators commented on his treatment prospects, they did not suggest he posed a low public safety risk. (Compare with *Moine, supra,* 62 Cal.App.5th at p. 451; *Williams, supra,* 63 Cal.App.5th at p. 1003.) His numerous prison rule violations further supported a reasonable finding that treating Burns in the community would present an unreasonable risk of danger to public safety. (See *Jefferson, supra,* 1 Cal.App.5th at p. 245.)

We reject Burns's contention that the trial court improperly relied on his general criminality rather than his specific risk of committing a super strike offense if treated in the community. The court highlighted the violent nature of his past offenses, the fact that the current crimes were committed while on parole, and his conduct in the current case that "endangered the lives of countless citizens" and ended with him jumping out of a moving car "as it continued down the street like an unmanned missile." Considering all these circumstances, the judge expressed "no doubt" that Burns would commit a super strike offense if treated in the community. We cannot say this was an unreasonable conclusion.

Burns argued that his serious crimes were mitigated because they were a product of his substance abuse. But Burns continued to use methamphetamine and other substances while in prison. Given his conduct in a custodial setting, the court could reasonably find that Burns had failed to establish a prima facie case he could be treated in the community without

posing an unreasonable risk of committing a super strike offense. We find no abuse of discretion.[7]

DISPOSITION

The order denying Burns's petition for mental health diversion is affirmed.

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

---

[7] The trial court was unequivocal that any sentence shorter than the 19 years, eight months imposed "will present a grave danger to the public." Moreover, it expressed the view that "this case does not fall within the spirit of the pretrial mental health diversion statutes." Given these comments, even if the court should have found that Burns made a prima facie case of suitability for mental health diversion, remand would be futile where it clearly would not have exercised its discretion to grant diversion. (See *Bunas, supra,* 79 Cal.App.5th at p. 861; see also *People v. Gerson, supra,* 80 Cal.App.5th at p. 1080.)