Filed 3/25/24  P. v. Wolpert CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID ALEXANDER WOLPERT,<br><br>        Defendant and Appellant. | A166450<br><br>(San Mateo County<br>Super. Ct. No. 20SF012801A) |

David Alexander Wolpert was charged with making criminal threats while personally using a deadly weapon.  (Pen. Code, §§ 422, subd. (a), 12022, subd. (b)(1); undesignated statutory references are to this code.)  Before trial, he requested mental health diversion in lieu of prosecution.  (§ 1001.36.)  Although he was diagnosed with delusional disorder, he later withdrew his request due to counsel's advice that a pending charge in another county presented a logistical hurdle for treatment.  A jury later found him guilty, and the trial court imposed a sentence of three years.  On appeal, he argues his counsel rendered ineffective assistance by advising him to withdraw his diversion request.  We agree and conditionally reverse the judgment and remand for the court to consider his eligibility for diversion.

## BACKGROUND

In November 2020, Wolpert drove to the headquarters of Facebook, upset it suspended his account.  Upon arriving at a parking lot, he

1

approached a security guard. He said if the guards did not get their "shit together," he was going to kill them. He encouraged the guard to "report it," brandished a pocket knife with the blade open, started fidgeting with the knife, and said he was serious. After emphasizing he was not joking, he warned "If there's a third time," " '[s]ecurity guards are going to die.' " Before driving away, he said " 'security needs to fix it within a month' " or else he would come back to kill them. In his report to police, the guard said Wolpert appeared to be experiencing mental problems at the time.

The San Mateo County District Attorney charged Wolpert with felony criminal threats (§ 422, subd. (a)), alleging that he personally used a deadly weapon (§ 12022, subd. (b)(1)) and committed the offense while on bail for another offense in Sacramento County (§ 12022.1). Based on concerns defense counsel expressed regarding competency to stand trial, the trial court issued an order of commitment in March 2021. A correctional facility ultimately determined Wolpert was not competent — his statements did not relate to reality, he had poor insight and judgment, tenuous impulse control, and was overtly psychotic — and it retained him for additional treatment. Proceedings resumed after Wolpert was found competent to stand trial in June 2021.

In March 2022, Wolpert applied for mental health diversion. (§ 1001.36.) A psychiatrist diagnosed him with a delusional disorder, emphasizing antipsychotic medication was medically appropriate and clinically indicated. A social worker report noted Wolpert was experiencing paranoia and delusions at the time of his offense, but he was not taking any antipsychotic medications at that time. A clinician also noted that, since "adhering to prescribed medications, Mr. Wolpert has demonstrated an increasingly goal directed thought process leading to a decrease in

2

circumstantial speech." Wolpert waived his right to a speedy trial, consented to the diversion program, and expressed a desire to adhere to his psychotropic medication plan and continue receiving services at a mental health center in Sacramento — a place where he previously received treatment.

In opposition, the prosecutor argued Wolpert would be unable to comply with treatment due to pending charges in Sacramento County for attempted possession of a weapon of mass destruction (§ 11418, subd. (a)) that required his appearance. (Allegations related to that offense included him talking about government conspiracies that the Federal Bureau of Investigation would not investigate, distilling ammonia, and possessing several bottles of bleach, radiator fluid, ammonia, and surgical tubing.) Wolpert's counsel agreed and advised Wolpert he could not comply with diversion because he had an open case in Sacramento County. Wolpert subsequently withdrew his application and proceeded to a jury trial.

In a bifurcated trial, a jury convicted Wolpert of criminal threats and found true the deadly weapon allegation. The trial court found true allegations that he committed the offense while on bail — a finding that was subsequently stricken. The court denied probation, sentencing him to three years — the middle term of two years, plus an additional year for the personal use enhancement. He did not serve any time in prison because he was given 1,392 days of presentence custody credit — 696 days for time served and 696 conduct days.

**DISCUSSION**

Wolpert urges us to conditionally reverse his conviction and remand to allow an evaluation of his eligibility for mental health diversion. He contends he was a suitable candidate for diversion due to a mental health disorder that played a significant role in the commission of his offense. He argues his

3

request to withdraw his application for pretrial diversion was the result of ineffective assistance.  We agree.

"Pretrial diversion" is "the postponement of prosecution," "at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).)  Postponement may be temporary or permanent. (*Ibid.*)  A defendant charged with a felony — as is the case here — may be diverted for a maximum period of two years.  (*Id.*, subd. (f)(1)(C)(i).)  At the end of the diversion period, the court shall dismiss the charges that were the subject of the criminal proceedings if the defendant's performance in diversion is satisfactory.  (*Id.*, subd. (h).)

Courts must find a defendant is both eligible and suitable for diversion. (§ 1001.36, subds. (b)–(c).)[1]  A defendant is eligible for pretrial diversion if diagnosed with a mental disorder that was a significant factor in the commission of the charged offense.  (§ 1001.36, subds. (b)(1)–(2).)  Under

_____

[1] At the time Wolpert first filed his mental health diversion application, the statute authorized a trial court to grant pretrial diversion if a defendant met all the following criteria: (A) defendant suffers from a mental disorder identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), as evidenced by the diagnosis from a qualified mental health expert; (B) the court is satisfied that the defendant's mental disorder was a significant factor in the commission of the offense; (C) the qualified mental health expert opined defendant's symptoms of the mental disorder motivated the criminal behavior and would respond to treatment; (D) the defendant consents to diversion and waives the right to a speedy trial; (E) defendant agrees to comply with treatment as a condition to diversion; and (F) the court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)(A)–(F); Stats. 2019, ch. 497, § 203, eff. Jan. 1, 2020.)  After Wolpert filed his appeal, the Legislature simplified the procedural process for obtaining pretrial diversion in Senate Bill No. 1223 (2021–2022 Reg. Sess.).  (Stats. 2022, ch. 735, § 1.)

recent amendments to the statute, there is a "presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime." (S*armiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) For defendants satisfying these requirements, the court must consider suitability for diversion: whether the symptoms would respond to treatment, whether the defendant agrees to comply with treatment, and whether the defendant will not pose an unreasonable risk of danger to the public safety if treated in the community. (§ 1001.36, subds. (c)(1), (3)–(4).) The court must be satisfied "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); *Sarmiento*, at p. 892.)

Even if the defendant makes a prima facie showing regarding the eligibility requirements, a trial court may nonetheless deny pretrial diversion if it finds the defendant or offense are not suitable for diversion. (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 888.) Any exercise of this residual discretion must be consistent with the principles and purpose of the diversion statute — "a strong legislative preference for treatment of mental health disorders." (*Sarmiento*, *supra*, 98 Cal.App.5th at pp. 892–893.) Indeed, the "Legislature intended the mental health diversion program to apply as broadly as possible." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).) We review the parties' arguments against the backdrop of this statutory framework.

## I.

The Attorney General contends Wolpert's appeal is moot because he has served his sentence and, in any event, cannot qualify for pretrial diversion after judgment has been entered. Not so.

True, an appeal cannot be maintained if the issues have become moot by subsequent acts or events, or where reversal has no practical effect. (*People v. DeLong* (2002) 101 Cal.App.4th 482, 486.)  But in cases in which defendants have satisfied their sentences by serving prison time and cannot obtain relief from imprisonment, determining whether an issue is moot includes "consideration of whether prejudicial consequences or disadvantageous collateral consequences can be ameliorated by a successful appeal." (*Id.* at p. 487.)  In those circumstances, appeals are not necessarily moot.  Defendants are entitled to appeal the judgment to clear their names and " 'rid [themselves] of "the stigma of criminality." ' " (*Id.* at pp. 487–489, italics omitted.)

That principle applies here.  Wolpert cannot obtain relief from imprisonment because the trial court awarded him custody credits exceeding his three-year term of imprisonment.  But the collateral consequences of having a serious felony conviction on his record could be ameliorated if he was granted pretrial mental health diversion. (*People v. DeLong*, *supra*, 101 Cal.App.4th at p. 487.)  Indeed, successful completion of pretrial diversion results in the dismissal of his criminal charges, and the arrest upon which diversion was based is deemed to never have occurred. (*People v. Frahs* (2020) 9 Cal.5th 618, 630–631 (*Frahs*); § 1001.36, subd. (h).)  Thus, the appeal is not moot.  None of the Attorney General's cited authorities persuade us otherwise.

We similarly reject the Attorney General's assertion in reliance on *Frahs* that Wolpert is procedurally barred from obtaining pretrial diversion because his case has already been adjudicated.  The circumstances in that case are distinguishable.  *Frahs* addressed whether section 1101.36 applied retroactively to a defendant convicted of an offense *before* the statute went

6

into effect. (*Frahs*, *supra*, 9 Cal.5th at p. 624 [permitting defendants whose cases were not final on appeal and had no opportunity to request diversion to do so].) Moreover, it expressly rejected as "unconvincing" the same argument the Attorney General makes here. (*Id.* at p. 640 [statute's definition of pretrial diversion "as the postponement of prosecution at any point of the judicial process 'until adjudication' " did not prevent retroactive application of the statute].) Indeed, other courts have reversed judgments with directions to reconsider a defendant's motion for pretrial mental health diversion after entry of a guilty or no contest plea. (See, e.g., *People v. Whitmill*, *supra*, 86 Cal.App.5th at pp. 1142, 1147; *People v. Qualkinbush*, *supra*, 79 Cal.App.5th at p. 883.) Accordingly, we reach the merits of Wolpert's appeal.

## II.

Wolpert argues his counsel rendered ineffective assistance by advising him to withdraw his pretrial diversion application because his pending Sacramento County case made compliance with diversion impossible. Wolpert contends his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, resulting in prejudice — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) We agree.

First, when examining whether counsel's performance was deficient, we generally defer to reasonable tactical decisions and presume "counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) But Wolpert has affirmatively established otherwise. (*People v. Ledesma* (2006) 39 Cal.4th 641, 745–746 [presuming counsel's performance falls within range of professional competence unless

7

defendant establishes the contrary].)  In response to the request for diversion, the prosecutor argued Wolpert would not be able to comply with treatment due to pending charges in another county.  The prosecutor cited no statute or case law, simply asserting "even if [Wolpert] is willing to comply with a treatment plan, he will be unable to do so because he will be transported to Sacramento County on his outstanding warrant to face charges there."  Wolpert's counsel repeated this assertion during an in-chambers conference and, as the Attorney General concedes, this is why Wolpert withdrew his request for diversion.  (Compare with *People v. Ledesma*, at p. 746 [claim of ineffective assistance must be rejected if the record fails to indicate why counsel engaged in challenged action or omission].)

But we can find nothing in the diversion statute or case law — and the Attorney General cites none — supporting the notion that a pending case in a different county barred Wolpert's suitability or eligibility for diversion. (*People v. McCary* (1985) 166 Cal.App.3d 1, 8 [counsel has a duty to carefully investigate all defenses of law available, promptly advise defendants of their rights and take necessary actions to preserve those rights].)  Rather, the statute suggests otherwise.  Its purpose is to meet the "unique mental health treatment and support needs of individuals with mental disorders" and provide counties "discretion and flexibility" to implement diversion. (§ 1001.35, subds. (c), (b).)  Nor is there conflict in the law governing the criteria for ordering diversion.  (Compare with *People v. Foster* (2003) 111 Cal.App.4th 379, 385 [attorney not responsible for failing to anticipate resolutions of law when a subject is doubtful or debatable].)  Thus, on this record, Wolpert's counsel had no rational, tactical purpose for advising his client to withdraw his application.  (*People v. Mai*, *supra*, 57 Cal.4th at p. 1009.)

We reject the Attorney General's argument that Wolpert is estopped from claiming ineffective assistance because the diversion application was withdrawn *at Wolpert's request*.  Generally, a defendant is estopped from claiming ineffective assistance if their counsel acts in conformance with the defendant's own request.  (*People v. Snow* (2003) 30 Cal.4th 43, 120.)  Wolpert's claim, by contrast, is predicated on his counsel's *advice* to withdraw the motion.  Nothing in the record indicates Wolpert sought to pursue this strategy against counsel's advice.  (See, e.g., *People v. Majors* (1998) 18 Cal.4th 385, 409 [defendant estopped from claiming ineffective assistance where action taken against counsel's advice].)

Second, counsel's advice prejudiced Wolpert, who withdrew his request even though he appeared to satisfy eligibility and suitability criteria.  And making the request would not have been futile.  He consented to diversion and waived his right to a speedy trial.  (§ 1001.36, subd. (c)(2).)  A psychologist opined he experienced paranoid and grandiose delusions, indicative of a delusional disorder — a diagnosis included in the most recent DSM — while he was evaluated for his competency to stand trial.  (§ 1001.36, subd. (b)(1).)  Wolpert's disorder was a significant factor in the commission of his offense.  (*Id.*, subd. (b)(2); *Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.)  For example, a police report indicated he was experiencing mental problems at the time of the offense.  (§ 1001.36, subd. (b)(2) [authorizing consideration of police reports and witness statements when assessing whether a mental disorder was a significant factor in the charged offense].)

Clinicians also noted Wolpert's mental disorder symptoms would respond to treatment.  (§ 1001.36, subd. (c)(1).)  A psychologist stated antipsychotic mediation was medically appropriate and clinically indicated for Wolpert, who exhibited moderate thought process disturbance as

evidenced by his illogical, tangential, circumstantial, and irrational statements. After taking antipsychotic medications, he demonstrated more goal-directed thought processes, leading to a decrease in circumstantial speech. He tolerated challenging conversations with less frustration. The Attorney General's assertion that insufficient evidence demonstrates his delusional disorder would respond to treatment is unsupported by the record.

Moreover, Wolpert agreed to comply with treatment — he wanted to continue his current psychotropic medication plan and return to a mental health program in Sacramento County where he had previously received treatment (§ 1001.36, subd. (c)(3).) As previously discussed, nothing supports the Attorney General's assertion that compliance with diversion was not possible given the Sacramento County charges. And on this record, nothing indicates the recommended treatment plan was insufficient to address his specialized needs. (*Id.*, subd. (f)(1)(A)(i).) The plan included continuing psychotropic medication and exploring any necessary changes to that regimen with a treating psychiatrist, mental health services at a treatment facility that already noted it would readmit Wolpert upon his release, exploring higher levels of treatment, abstaining from marijuana, and connecting with appropriate medical services to address several physical health issues.

Finally, there is prima facie evidence Wolpert does not pose an unreasonable risk of danger to public safety — that is, an unreasonable risk he would commit a new violent felony under section 667. (§ 1001.36, subd. (c)(4) [incorporating § 1170.18's definition of "unreasonable risk of danger to public safety"].) Those violent felonies are "super strikes," including murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, serious or violent felonies punishable

by death or life imprisonment, and possession of a weapon of mass destruction. (*People v. Moine* (2021) 62 Cal.App.5th 440, 449.) He has no prior convictions, violent offense convictions, or prior prison commitments. (§ 1001.36, subd. (c)(4) [court may consider defendant's violence and criminal history]; *Moine*, at p. 451 [dangerousness is generally present where defendants have long criminal histories involving violent felonies].) His criminal threat charge did not support an inference he was likely to commit a super strike offense in the future. (*Moine*, at pp. 450–451.) Wolpert also noted mental health treatment, including his prescribed medications, was helpful, and he expressed a willingness to participate in treatment. (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1152 [defendant's statements regarding willingness to participate in treatment demonstrated, in part, lack of substantial evidence defendant would commit a super strike offense].)

To the extent the Attorney General suggests Wolpert's section 11418, subdivision (a) charge in Sacramento County for attempted possession of a weapon of mass destruction establishes his dangerousness, we disagree. That offense does not statutorily preclude placement into diversion. (§ 1001.36, subd. (d)(8) [defendants whose current charged offenses are violations of § 11418, subds. *(b)* or *(c)* may not be placed in diversion].) Moreover, nothing in the record indicates how the charge was resolved, and Wolpert was released on bail for that offense. (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 451 [releasing defendant on bail indicated "the court necessarily found that [the defendant] was not likely to cause 'great bodily harm to others' if released" and it is "logically inconsistent to deny mental health diversion on the ground that [the defendant] was likely to commit a super strike offense"].) Under these circumstances, he has demonstrated a reasonable probability of a different outcome had counsel not advised him to

withdraw his pretrial diversion application. (*Strickland v. Washington, supra,* 466 U.S. at p. 694 ["A reasonable probability is a probability sufficient to undermine confidence in the outcome"].)

In sum, Wolpert has established both deficient performance and resulting prejudice. Accordingly, we conclude a conditional reversal and remand is warranted.[2] (*People v. Burns* (2019) 38 Cal.App.5th 776, 789–790 ["Conditional reversal thus restores the case to its procedural posture before the jury verdict for purposes of evaluating [a defendant's] eligibility for pretrial mental health diversion"].)

## DISPOSITION

The judgment is conditionally reversed. The matter is remanded to the trial court with directions to hold a diversion eligibility hearing under section 1001.36. If the court finds Wolpert eligible under the statute, it may grant diversion. If Wolpert satisfactorily performs in diversion, the court shall dismiss the charges. (*Id.,* subd. (h).) If the court does not grant diversion, or if the court grants diversion but Wolpert does not complete it satisfactorily, the court shall reinstate Wolpert's conviction.

---

[2] In a separate order filed this same date, we dismiss Wolpert's companion petition for writ of habeas corpus based on the same grounds as moot. (*In re David Alexander Wolpert,* on habeas corpus, A168798.)

12

_____

RODRÍGUEZ, J.

WE CONCUR:

_____

FUJISAKI, Acting P. J.

_____

PETROU, J.

A166450

13