Filed 10/9/25  P. v. Camacho CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MISAEL CAMACHO,<br><br>    Defendant and Appellant. | B335481<br><br>(Los Angeles County<br>Super. Ct. No. BA501171) |


        APPEAL from a judgment of the Superior Court of Los Angeles County, Alison S. Matsumoto, Judge.  Conditionally reversed and remanded with directions.
        Travis Daily, under appointment by the Court of Appeal, for Defendant and Appellant.
        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Misael Camacho appeals from a judgment that sentences him to seven years four months in state prison for several incidents of burglary and indecent exposure occurring over four weeks in October and November of 2021.  Camacho contends the trial court erred when it denied his Penal Code section 1001.36 motion for mental health diversion because it improperly applied a lower legal standard to conclude he posed a public safety risk.[1]  We conditionally reverse the judgment and remand the matter to the trial court with instructions to conduct a new hearing to consider Camacho's eligibility and suitability for mental health diversion using the correct standard, which requires a court to find that a defendant is likely to commit a super strike offense.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Underlying Offenses*

On October 13, 2021, at 3:00 a.m., Caroline Juarez woke to someone pushing open the door to her bedroom and then to noises in the bathroom.  She discovered Camacho naked in her bathroom attempting to take a shower.  Juarez immediately closed the bathroom door and yelled for her husband to help.  Her husband held the door closed, trapping Camacho inside, while Juarez and their two children left the apartment and called the police.  Juarez testified Camacho did not threaten her and he

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

appeared to be confused or disoriented when she encountered him in the bathroom.

On November 7, 2021, a tenant observed Camacho masturbating in the laundry room of the same apartment building. The tenant immediately left through a door that required a key fob to access. She did not interact with Camacho. Camacho attempted to follow her but was unable to open the locked door. The tenant returned with her father approximately 20 minutes later but Camacho was not there. After the tenant and her father left, Camacho came back and continued touching himself. The tenant did not report the incident to the police or testify at trial. The People admitted surveillance video from the apartment building and the apartment manager testified to the events occurring on the video.

On November 15, 2021, at approximately 9:30 p.m., Camacho entered Maria Carrillo Morales's second floor apartment from her unlocked balcony door. Morales testified the balcony could be reached by climbing a fence surrounding the first floor. Camacho wore a t-shirt but was naked from the waist down. Morales observed him "playing with his private parts." Morales told him to "get out of here." Camacho responded, "I'm sorry. I'm sorry. I'm sorry." When Morales's daughter came out of the bathroom and began to scream, Morales physically pushed Camacho out of the apartment. Camacho stated, "Thank you. Thank you. Thank you."

Morales immediately reported the incident to the apartment manager. The manager and Morales found Camacho still inside the building, and the manager hit him with a broom to get him to leave. Camacho left and sat down at the entrance to the library next door. Morales testified, "He continued playing

3

with his private parts." The manager called the police but Camacho had departed by the time they arrived.

Camacho returned to the building approximately two hours later. He entered Xiaohong Zhong's bedroom by prying open her window. Zhong ran into the living room screaming for help. Camacho followed her into the living room. Camacho was wearing shorts but no top. Zhong's son told him to "get out" and pushed Camacho out the front door. Zhong's son followed Camacho out of the apartment and noticed he was walking slowly and appeared confused. When Camacho entered the room containing the dumpster, Zhong's son trapped him inside by holding the door closed. He called the police. The apartment manager and two other tenants helped to keep the door closed until the police arrived.

Camacho was arrested. The responding officer testified it was a "possibility" that Camacho was under the influence of a controlled substance because "he was rambling, wasn't answering questions, with glossy eyes."

An information charged Camacho with three counts of first degree residential burglary for entering Juarez's, Morales's, and Zhong's apartments (§ 459; counts 1, 2, and 4) and three counts of indecent exposure (§ 314, subd. (1); counts 3, 5, and 6).

B.    *The Mental Health Diversion Proceedings*

Camacho filed a pretrial motion for mental health diversion pursuant to section 1001.36. He submitted a report from Dr. Nadim Karim who diagnosed him with substance use disorder, a qualifying disorder for mental health diversion under section 1001.36. Camacho reported to Dr. Karim that, at the time of the offenses, he was using methamphetamine, alcohol,

4

and rock cocaine daily. Dr. Karim stated Camacho's substance use significantly contributed to the offenses, and he believed Camacho would respond to treatment. Applying the section 1001.36 definition of "an unreasonable risk to public safety," Dr. Karim opined Camacho "would be at the lowest possible risk to commit any of the aforementioned crimes if treated in the community. He would, therefore, not present an unreasonable risk of danger to public safety as per this definition. Moreover, he has no prior criminal history."

The People objected to mental health diversion and the trial court indicated its tentative was to deny the motion. Although Camacho was "technically eligible," the court stated it would not find him eligible based on the sole diagnosis of substance use disorder without additional disorders, such as "PTSD effective disorder [or] anything of that nature." The court continued the matter for Camacho to supplement his motion.

Camacho filed a supplemental motion with a psychological evaluation by Dr. Armando de Armas, who concluded Camacho had borderline intellectual functioning, which impacted his adaptive functioning. The People again opposed mental health diversion, citing only to public safety issues given Camacho entered apartments with women in them "for the purpose of sexual gratification of some kind."

The court denied appellant's motion stating, "My concern, and this goes to whether or not the person is suitable, is whether or not Mr. Camacho could potentially commit a super strike. A super strike is rape, rape by force. The fact that he is naked, entering into women's bedrooms, I absolutely believe that that is a hundred percent possible. Any woman who's in a bedroom and a man comes in unclothed, the first thing they feel is terror at the

5

possibility of being sexual[ly] assaulted.  And so I do believe that he is capable and could potentially commit a super strike based on these facts."

C.    *The Trial*

The matter proceeded to a jury trial and the jury found Camacho guilty as charged.  On February 15, 2024, the trial court sentenced Camacho to a total determinate term of seven years four months in state prison, comprised of consecutive terms of four years for burglary on count 1, one year four months each for burglary on counts 2 and 4, and eight months for indecent exposure on count 6 plus concurrent terms of six months each for indecent exposure on counts 3 and 5.

Camacho timely appealed.

**DISCUSSION**

A.    *Governing Law*

In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders.  (See *People v. Frahs* (2020) 9 Cal.5th 618, 624 (*Frahs*); *Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133.)  Pretrial diversion "allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment." *(Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 890 (*Sarmiento*).)  The statute expressly promotes "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety."  (§ 1001.35, subd. (a); see

6

*Sarmiento*, at p. 887 ["section 1001.36 was designed to encourage trial courts to broadly authorize pretrial mental health diversion, providing treatment for qualifying mental disorders that result in criminal behavior"]; *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*) ["[t]he Legislature intended the mental health diversion program to apply as broadly as possible"]; accord, *People v. Williams* (2021) 63 Cal.App.5th 990, 1004 (*Williams*).)

Section 1001.36, subdivisions (b) and (c), set forth the criteria for eligibility and suitability for diversion. Eligibility entails satisfying two prongs: (1) a defendant has been diagnosed with a recognized mental health disorder, and (2) the disorder was "a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).)

Once eligibility is established, a trial court "must consider whether the defendant is suitable for pretrial diversion." (§ 1001.36, subd. (c).) A defendant is suitable if: (1) in the opinion of a qualified mental health expert, the defendant's mental health disorder would respond to treatment; (2) the defendant consents to diversion and agrees to waive his or her speedy trial rights; (3) the defendant agrees to comply with treatment requirements; and (4) the defendant will not pose an "unreasonable risk of danger to public safety" if treated in the community. (*Id.*, subd. (c)(1)-(4).)

""Unreasonable risk of danger to public safety"' means an unreasonable risk that the petitioner will commit" any one of a set of statutorily defined violent offenses, including homicide, sexually violent offenses, sex acts against minors, and other serious felonies punishable by life imprisonment or death. (*People v. Brown* (2024) 101 Cal.App.5th 113, 121 (*Brown*);

7

*Sarmiento, supra*, 98 Cal.App.5th at p. 892; see §§ 667, subd. (e)(2)(C)(iv), 1170.18, subd. (c).)  Sexually violent offenses, in turn, include various forms of rape and sexual assault "committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person."  (Welf. & Inst. Code, § 6600, subd. (b).)

The violent felonies encompassed in the definition of "unreasonable risk of danger to public safety" are known as ""super strikes.""  (*People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).)  "Thus, the risk of danger is narrowly confined to the likelihood the defendant will commit a [super strike]."  (*Id.* at p. 450; see *Williams, supra,* 63 Cal.App.5th at p. 1001.)  Section 1001.36, subdivision (c)(4), further instructs the court to "consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate" to make its risk to public safety determination.

Finally, the statute gives the trial court discretion to deny diversion even if the statutory requirements are met:  "[T]he court may, in its discretion, . . . grant pretrial diversion to a defendant" after the court considers the two eligibility and four suitability requirements.  (§ 1001.36, subd. (a); Sen. Bill No. 215, Assem. Com. on Pub. Saf., June 12, 2018 hearing, p. 7 ["If a judge feels that a defendant's participation in a diversion program is not appropriate from the standpoint of public safety, or any other reason, the judge can prohibit the defendant from participating in diversion."]; *Brown, supra,* 101 Cal.App.5th at p. 121; *Sarmiento,*

*supra*, 98 Cal.App.5th at p. 892; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079.)

This residual discretion is not unfettered and must be exercised "'consistent with the principles and purpose of the governing law.'" (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 891 (*Qualkinbush*); see *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 ["'[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.'"]; *Williams, supra*, 63 Cal.App.5th at p. 1001 ["scope of discretion always resides in the particular law being applied"].) "Where the court chooses to exercise this residual discretion to deny diversion, its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals." (*Sarmiento, supra*, 98 Cal.App.5th at p. 893.)

"If the trial court grants pretrial diversion and the defendant performs 'satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion.' (§ 1001.36, subd. (e).) If the defendant does not perform satisfactorily in diversion, becomes gravely disabled, or commits new crimes, the court may reinstate criminal proceedings. (§ 1001.36, subd. (d).)" (*Moine, supra*, 62 Cal.App.5th at p. 448; accord, *Frahs, supra*, 9 Cal.5th at p. 627.)

B. *Standard of Review*

Section 1001.36, subdivision (e), places the burden on the defendant "to make a prima facie showing that the defendant will

meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion." If the defendant is both eligible and suitable, the trial court must also be satisfied "that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); see *Sarmiento, supra*, 98 Cal.App.5th at p. 892 [explaining assessment of the recommended mental health treatment "is not an additional eligibility or suitability requirement the defendant must meet" but rather "contemplate[s] an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions"].)

We review the trial court's denial of a motion for mental health diversion for abuse of discretion. (See *People v. Graham* (2024) 102 Cal.App.5th 787, 795; *Whitmill, supra*, 86 Cal.App.5th at p. 1147; *Moine, supra,* 62 Cal.App.5th at pp. 448-449.) "'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on . . . factual findings that are not supported by substantial evidence.'" (*Graham,* at p. 795.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' [Citation.] However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence.'" (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

C.      *The Trial Court Abused its Discretion by Denying Pretrial Mental Health Diversion Because Camacho "Could Potentially" Commit a Super Strike*

The sole suitability factor in dispute is whether Camacho posed an unreasonable risk to public safety as defined by section 1001.36.  The People do not contend the other suitability factors were not met.  The trial court found Camacho "could potentially" commit a super strike based on the facts of the charged offenses, that is, "he is naked, entering into women's bedrooms."  Camacho challenges this finding on two grounds: (1) the court improperly applied a lower legal standard to conclude he posed a public safety risk; and (2) it failed to properly consider the statutory factors.

We focus our analysis on whether the court used the proper standard to make its finding.  The record reflects the trial court stated twice that Camacho "could potentially commit a super strike."  The trial court did not indicate it used any other legal standard to make its determination.  The People acknowledge, and the legal authorities establish, however, that a court must find that a defendant is ""'likely to commit a super-strike offense''"" in assessing whether he poses an unreasonable danger to the community.  (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 690; see *Sarmiento, supra,* 98 Cal.App.5th at p. 898*; Whitmill, supra,* 86 Cal.App.5th at p. 1151; *Williams, supra*, 63 Cal.App.5th at p. 1001; *Moine, supra*, 62 Cal.App.5th at p. 450.)

The California Supreme Court has held a person is "'likely'" to engage in sexually violent criminal behavior if "'the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the

11

community.'" (*People v. Roberge* (2003) 29 Cal.4th 979, 982 [addressing Welf. & Inst. Code, § 6600, subd. (a)(1)]; accord, *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 922 [addressing Welf. & Inst. Code, § 6601, subd. (d)].) The Court further explained the phrase "'*likely* to engage in acts of sexual violence . . . connotes much more than the mere *possibility*'" the person will reoffend. (*Ghilotti,* at p. 922.) By its use of the term "potentially," which common usage equates with a possible condition,[2] rather than a likely condition, the trial court improperly applied a legal standard that is lower than what is required. Under *Roberge* and *Ghilotti,* the court must find it is likely or there is "a serious and well-founded risk" that Camacho will commit a super strike, not that it is merely possible he will do so or that he has the potential to do so.

The People argue the court's use of the word "potentially" must be examined in context. In their view, the court's statement that it "absolutely believe[d] that that is *a hundred percent possible*" provided sufficient context to demonstrate its use of the words "'potential' or 'possibility' was the functional equivalent of assessing whether appellant was 'likely' to commit a super strike involving a sexual offense." We disagree. The court did not use the word "likely" in its remarks from the bench. It instead denied mental health diversion because it found Camacho "could potentially" commit a super strike and it was "a hundred percent possible" he could commit a super strike. Given this record, we

---

[2] See Merriam-Webster's Collegiate Dict. <https://unabridged.merriam-webster.com/collegiate/potentially> [as of Oct. 7, 2025] [defining "potentially" as "in a potential or possible state or condition"].

cannot interpret the court's words to mean it applied the correct legal standard.

D.    *The Proper Remedy is Remand for a New Hearing*

Having concluded the trial court erred, we now consider the appropriate remedy.[3]  The People assert, "In the event this Court concludes the trial court did not base its motion on the proper standard, then the matter should be conditionally reversed with directions that the court reconsider appellant's motion for mental health diversion under section 1001.36.  (See *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 891-892 [conditionally remanding for the trial court to reconsider the motion for mental health diversion on proper criteria]; see also *Wade v. Superior Court* (2019) 33 Cal.App.5th 694, 718 [directing reconsideration of request for diversion under § 1001.80 based on a proper exercise of discretion].)"

In his opening brief, Camacho requested remand for a new hearing to consider his suitability for mental health diversion.  In reply, however, Camacho argues conditional remand is inappropriate because "remand would merely delay the inevitable conclusion that appellant is suitable for mental health diversion."

We conclude the appropriate remedy is conditional reversal with directions to the trial court to conduct a new hearing to determine Camacho's eligibility and suitability under section 1001.36, bearing in mind the correct legal standard as well as the statutory principles and purpose of the mental health diversion statute.  (See *Qualkinbush, supra,* 79 Cal.App.5th at

---

[3]    The People do not dispute that Camacho demonstrated prejudice if the trial court applied the wrong standard.

13

p. 892; *People v. Burns* (2019) 38 Cal.App.5th 776, 789-790 [conditional reversal where remand for consideration of mental diversion would not be futile]; cf. *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [in general, remand is the appropriate remedy where a court is unaware of the scope of its discretionary powers].)

## DISPOSITION

The judgment is conditionally reversed with directions to the trial court to conduct a new hearing on Camacho's eligibility and suitability for pretrial mental health diversion in accordance with this opinion.  If the trial court grants diversion and Camacho successfully completes diversion, the court shall dismiss the charges.  (See § 1001.36, subd. (e).)  If the court denies the motion for mental health diversion or if Camacho does not successfully complete diversion, then the court shall reinstate the conviction and sentence.


MARTINEZ, P. J.


We concur:



SEGAL, J.                                    FEUER, J.


14